Homer W. DURHAM *v.* ARKANSAS DEPARTMENT OF
HUMAN SERVICES/Child Support Enforcement Unit

95-299                                                912 S.W.2d 412

Supreme Court of Arkansas
Opinion delivered December 18, 1995
[Petition for rehearing denied January 16, 1996.*]

---

* Corbin and Roaf, J.J., would grant.

790

*J.G. Molleston*, for appellant.

*Greg L. Mitchell*, for appellee.

ROBERT L. BROWN, Justice. Appellant Homer W. Durham appeals from a judgment awarded to appellee Arkansas Department of Human Services/Child Support Enforcement Unit in the

amount of $16,621.20. The Arkansas judgment was the result of an Illinois judgment for child support arrearages which was entered in that state in 1975. It was subsequently revived in Illinois in 1992, and then registered in Arkansas in 1993. Durham contends that the chancellor erred in enforcing a judgment which had been revived in Illinois under Illinois's 20-year statute of limitations rather than refusing to enforce the judgment under Arkansas law which limits commencement of actions on judgments to ten years after the cause of action accrues. We disagree with Durham's analysis and affirm the judgment.

On July 20, 1971, appellant Durham and his wife, Linda Sue Durham (now Kautz), were divorced in Illinois. The divorce decree ordered Durham to pay $20 per week for each of the couple's two children. According to a stipulation of facts entered into by the parties, Durham resided in Arkansas between May 7, 1971, and June 25, 1975. On July 9, 1975, Durham relinquished his parental rights in his children so that his former wife and her new husband could adopt them, which they did. At that time, further support obligations were terminated. Unpaid support arrearages totalling $7,600, however, had accumulated, and the Illinois court awarded Linda Kautz judgment in that amount on that same date. Pursuant to that judgment, Durham was ordered to pay $50 a week to reduce the judgment amount.

In 1992, Human Services attempted to enforce the judgment in Arkansas but learned that it had not been revived in Illinois. On September 18, 1992, the Illinois circuit court revived Kautz's judgment against Durham by court order and extended the judgment until 2002. Human Services petitioned to register the revived Illinois judgment in the chancery court of Columbia County, Arkansas. On March 26, 1993, the chancellor ordered registration of the Illinois judgment but delayed enforcement of it until the matter could be further developed. On October 24, 1994, the chancellor entered judgment in the amount of $16,621.20 against Durham. The chancellor found that the 1992 Illinois judgment was valid and was not barred by the Arkansas statute of limitations and further found that the 20-year Illinois statute of limitations applied. The chancellor again granted the request for registration of the Illinois order and provided for enforcement of that judgment by execution and garnishment. On November 7, 1994, Durham filed a motion for new trial or amendment of judgment

and primarily contended that the chancellor retroactively applied Act 468 of 1993, now codified as Ark. Code Ann. § 9-17-604 (Repl. 1993), in applying the Illinois statute of limitations. The motion was denied.

Durham's sole point on appeal is that the chancellor erred in giving retroactive effect to Act 468 of 1993, which provides for application of the longer statute of limitations as between the law of the state issuing the support order (in this case, Illinois) and Arkansas. Act 468 became effective March 13, 1993, which was one day after the chancellor issued his letter opinion approving the registration of the Illinois judgment. Durham directs us to our caselaw that the General Assembly may not revive a cause of action previously barred by the existing statute of limitations. *See Johnson* v. *Lilly*, 308 Ark. 201, 823 S.W.2d 883 (1992). He argues that if the revival of the Illinois judgment and its registration in Arkansas were already barred as of March 13, 1993, under Arkansas's ten-year statute of limitations, Act 468 could not be used to resurrect it.

■ The chancellor makes no reference to Act 468 of 1993 in his letter opinion, his order, or his judgment in this matter. Human Services, however, concurs with Durham that the chancellor relied on Act 468 and retroactively applied it to the registration of this foreign judgment. We agree that if the chancellor did indeed retroactively apply Act 468 so as to breathe life into a dormant judgment, this was an erroneous application of the law. But we further agree with Human Services that if the result reached by the chancellor was correct even for the wrong reason, we will affirm it. *In the Matter of Estate of F.C.*, 321 Ark. 191, 900 S.W.2d 200 (1995).

■ In 1985, the General Assembly passed Act 387, which reads in part relating to conflicts of laws and limitation periods:

(a) Except as provided by § 16-56-204, if a claim is substantially based:

(1) Upon the law of one (1) other state, the limitation period of that state shall apply; or

(2) Upon the law of more than one (1) state, the limitation period of one (1) of those states, chosen by the law of conflict of laws of this state, shall apply.

(b) The limitation period of this state shall apply to all other claims.

Ark. Code Ann. § 16-56-202 (1987).

If the statute of limitations of another state applies to the assertion of a claim in this state, the other state's relevant statutes and other rules of law governing tolling and accrual shall apply in computing the limitation period, but the other state's statutes and other rules of law governing conflict of laws shall not apply.

Ark. Code Ann. § 16-56-203 (1987). The claim in this case is in the form of enforcement of an Illinois judgment, which is substantially based on the law of that state. *See* Ill. Rev. Stat. ch. 110, par. 13-218.

■ We recognize that Arkansas provides a ten-year period for the enforcement of all judgments and that this period also applies to judgments revived in this state. Ark. Code Ann. §§ 16-56-114, 16-65-501 (1987). But in the instant case a judgment was revived in Illinois under that state's 20-year statute of limitations, and registration and enforcement were then sought in Arkansas. Thus, we must address whether this state should give full faith and credit under the U.S. Constitution to a validly revived judgment in Illinois. We can discern no valid reason for not doing so.

■ The oft-stated law in this state is that a foreign judgment is as conclusive on collateral attack as a domestic judgment, absent fraud in the procurement or want of jurisdiction in the rendering court. *See, e.g., Strick Lease, Inc.* v. *Juels*, 30 Ark. App. 15, 780 S.W.2d 594 (1989); *see also Tisdale* v. *Seavey*, 286 Ark. 222, 691 S.W.2d 144 (1985). Full faith and credit, however, does not require a state to substitute the statute of another state that reflects a conflicting policy from that of its own statute. *Orintas* v. *Meadows*, 17 Ark. App. 214, 706 S.W.2d 199 (1986).

We are aware that cases in the various states dealing with conflicting statutes of limitation are not of one mind. One treatise on conflict of laws states the problem as follows:

Some uncertainty exists whether revival of the original judgment in the state of rendition will serve to overcome

the recognizing forum's shorter limitation on the original judgment, assuming that the revived judgment itself is not barred by the limitation. One view distinguishes between revival prolonging the original judgment and revival having the effect of creating a new judgment: the former is said to continue to be barred by the shorter local statute, while the latter is entitled to full faith and credit. However, the implication in the U.S. Supreme Court's decision in Watkins v. Conway [385 U.S. 188 (1966) (per curiam)] is that *any* revival of a judgment is entitled to full faith and credit.

*Scoles and Hay, Conflict of Laws* § 24.32, p. 995 (2d Ed. 1992).

■   While Arkansas does have a ten-year limitations period for revival of judgments and for enforcement of judgments, it also has enacted § 16-56-202 and § 16-56-203, which apply the statute of limitations of a foreign state, when the claim involved is substantially based on the law of that state. We perceive no contravention of our domestic policy by giving full faith and credit to a valid Illinois judgment, appropriately revived in that state, under that state's limitations statute. Were we to sanction Durham's position, this might well lead to situations where devious obligors would shop from state to state to find the most favorable limitations period and then subsequently seek to invalidate enforcement of the issuing state's judgment. We can also conceive of the burden placed on those seeking to enforce support orders by first having to ascertain the state of the obligor's residence in order to determine the time period for revival. While there is no indication that either circumstance existed in the instant case, an opinion in accordance with Durham's position would allow for that result.

■   Though the chancellor, according to the parties, permitted registration and enforcement of the Illinois judgment under an inapposite statute, we affirm his decision and give full faith and credit to the revived Illinois judgment.

Affirmed.

NEWBERN, CORBIN, and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Justice, dissenting. The majority correctly concludes that the issue we must address is whether this state

should give full faith and credit under the U.S. Constitution to an Illinois judgment, validly revived in that state. Because the Illinois revival is simply a continuation of the original judgment, I find our statute of limitations precludes enforcement of the judgment. Consequently, I would reverse the trial court's decision.

Arkansas Code Annotated § 16-56-114 (1987) provides: "Actions on all judgments and decrees shall be commenced within ten (10) years after cause of action shall accrue, and not afterward." This ten year limitations period was first adopted by our legislature in 1844. Acts 1844, § 1, p. 24. In *Jordan* v. *Muse*, 88 Ark. 587, 115 S.W. 162 (1909), this Court addressed the issue of whether the precursor of our current statute of limitations applied to foreign judgments as well as domestic judgments. We noted that the statute by its express terms "relates to 'actions on *all* judgments and decrees.'" Further, this Court noted it could not presume that the legislature used such comprehensive terms merely for the purpose of including all kinds of domestic judgments. Consequently, we concluded that the statute was applicable to actions on foreign judgments.

Further, it is well established that "[a] valid judgment rendered in a State of the United States may be denied enforcement in a sister State if suit on the judgment is barred by the sister State's statute of limitations applicable to judgments." Restatement (Second) Conflicts of Law § 118, (1971). In addition, the United States Supreme Court has concluded that a state is free to apply its own statute of limitations in an action to enforce a judgment rendered in a sister state. *McElmoyle* v. *Cohen*, 13 Pet. (38 U.S.) 312 (1839); *see also Watson* v. *Conway*, 385 U.S. 188 (1966).

Since the decision in *Jordan* v. *Muse*, the General Assembly has adopted the Uniform Enforcement of Foreign Judgments Act, Ark. Code Ann. §§ 16-66-101—16-66-619 (1987 and Supp. 1993). However, I find the adoption of the Uniform Enforcement of Foreign Judgments Act has not affected the holding of *Jordan*. The act does not contain a statute of limitations for foreign judgments, and other states which have adopted the act have applied their own statute of limitations to foreign judgments. *See Pan Energy* v. *Martin*, 813 P.2d 1142 (Utah 1991); *Johnson Bros. Wholesale Liquor* v. *Clemmons*, 661 P.2d 1242, *cert. denied*, 464 U.S. 936 (Kan. 1983).

Although it is clear that the 1975 judgment cannot be enforced, the difficult question is what effect to give the 1992 revival of judgment. Comment c of the Restatement (Second) Conflicts of Law § 118, (1971), provides in part:

> If under the local law of the State of rendition the effect of this revival is to create a new judgment, then suit on this judgment may not be held barred under full faith and credit in the sister State. The contrary will be true, however, if the effect of the revival in the State of rendition is not to create a new judgment but rather to prolong the effective life of the original judgment.

*See also Johnson Bros. Wholesale Liquor* v. *Clemmons*, 661 P.2d 1242, *cert. denied*, 464 U.S. 936 (Kan. 1983); Annotation, Conflict of laws as to time limitations governing action on foreign judgment, 36 A.L.R.2d 567 (1954). Thus, the controlling question is whether the 1992 revival was a "new" judgment. In Illinois, a "revival of a judgment is not the creation of a new judgment. but merely a continuation of that being revived." *Guertler* v. *Barlow Woods, Inc.*, 596 N.E.2d 24 (Ill. App. 1 Dist. 1992); *Bank of Edwardsville* v. *Raffalelle*, 45 N.E.2d 651 (1942). Consequently, Arkansas should not enforce the Illinois judgment based upon our statute of limitations regarding the enforcement of judgments.

Although the majority also cites Ark. Code Ann. § 16-56-202 and § 16-56-203 (1987), this is not an action involving the "assertion of a claim," rather it is an action for the enforcement of a judgment. This state, as a matter of policy, has determined that actions to enforce judgments must be commenced within ten years after the cause of action accrues. That period applies regardless of whether the issuing state has a five year limitation on judgments or a twenty year limitation on judgments. *See* Annotation, Conflict of laws as to time limitations governing action on foreign judgment, 36 A.L.R.2d 567 (1954). The majority expresses the fear that, should this Court deny enforcement of the revived judgment, judgment debtors would attempt to avoid their obligations by moving to states with shorter limitations periods. It is true that such a holding would render unenforceable in this State an Illinois judgment which lay dormant for some seventeen years after its entry in 1975, and sixteen years after the

appellant moved back to his home state of Arkansas. It is also true that such a result comports with the doctrine of Full Faith and Credit and our limitations policy of long standing.

For the foregoing reasons, I respectfully dissent.

NEWBERN and CORBIN, JJ., join in this dissent.