OFFICE OF CHILD SUPPORT ENFORCEMENT *v.*
Stephen L. CLEMMONS

CA 98-542 984 S.W.2d 837

Court of Appeals of Arkansas
Division III
Opinion delivered February 3, 1999

*Kennedy, Phillips & Douthit,* by: *John C. Riedel* and *J. Michael Helms,* for appellant.

*Kenneth A. Hodges,* for appellee.

MARGARET MEADS, Judge. The Arkansas Office of Child Support Enforcement ("OCSE") appeals a Pope County chancellor's order estopping it and Sheila Allen from obtaining a judgment and/or attempting to collect any child-support arrearages accrued since May 1976 against Sheila's former husband, Stephen Clemmons, appellee herein, under the Uniform Interstate Family Support Act ("UIFSA"). The chancellor determined that appellant was estopped from collecting such arrearages based upon Sheila's concealment of the parties' child from appellee. OCSE argues that pursuant to UIFSA, a trial court cannot consider collateral matters such as visitation but only the child-support arrearages that have accrued under the foreign support orders. We agree with appellant's argument; therefore, we reverse.

Sheila and Stephen Clemmons were married in the state of Missouri on March 4, 1971, and divorced there on October 16, 1974. One child, Christopher Stephen Clemmons, was born of that union on June 5, 1973. Sheila was awarded custody of Christopher, with Stephen ordered to pay seventy-five dollars per month child support until Christopher entered the first grade, at which time support was to increase to one hundred dollars per month. The custody and support provisions of this decree were modified by the Missouri court on May 7, 1976, with Sheila having custody of the minor child for nine months during the regular school term and Stephen having custody for three months during the summer, with each party having reasonable visitation while the child was in the other's custody. Further, Stephen was ordered to pay seventy-five dollars per month child support, which abated during his three months of custody.

On September 7, 1976, the Washington County, Arkansas, juvenile court placed custody of Christopher with Sheila, apparently based on a dependency-neglect petition filed by Sheila. On September 9, 1976, the juvenile court quashed that order and placed physical custody with Stephen. However, Sheila failed to appear at that hearing with Christopher; Stephen would later learn that she had taken him to California. On November 17, 1976, Stephen also obtained an order from the Missouri court awarding him temporary custody of Christopher.

In February 1977, Stephen located Sheila and Christopher in California, but Sheila refused to allow him any contact or communication with Christopher. Law enforcement officials declined to assist Stephen in gaining physical custody of Christopher, even though he had the Arkansas and Missouri custody orders.

A hearing was held in California in December 1977 on the issues of custody, visitation, and support. Both parties were present and represented by counsel. On March 27, 1978, an order was entered in the Superior Court of California in the County of Los Angeles acknowledging the Missouri decree as a valid foreign decree and giving it full faith and credit; finding a child-support arrearage of $525.00 from June 1977 through December 1977; placing custody of Christopher with Sheila, with reasonable visitation awarded to Stephen; and modifying Stephen's child-support obligation from seventy-five dollars per month to one hundred twenty-five dollars per month as of January 1, 1978. After the California order was entered, Sheila continued to move around California and continued to refuse any contact between Stephen and Christopher. Appellee did not appeal the California order granting custody to Sheila, nor did he ever pursue a contempt citation concerning her denial of his visitation with Christopher, which would have been the proper forum for these issues. *See Scinta v. Markward*, 266 Ark. 976, 588 S.W.2d 456 (Ark. App. 1979)(citing *Kline v. Kline*, 260 Ark. 550, 542 S.W.2d 499 (1976)).

In 1993, Sheila assigned her rights to the state of Missouri for assistance in collecting child-support arrearages. After locating Stephen in Arkansas, Missouri initiated an interstate action to

enforce Stephen's child-support obligation under the 1978 California award. On February 6, 1995, OCSE filed a request for registration of the California order and a petition to reduce Stephen's unpaid child support to judgment. On November 14, 1995, the Pope County Chancery Court entered the California order as a foreign decree and ordered briefing of two issues: the mother's assignment of rights of her non-minor child, and the proper statute of limitations. On January 22, 1998, the chancellor entered an order estopping OCSE or Sheila from obtaining a judgment and/or attempting to collect any child-support arrearages based upon the fact that Sheila had willfully concealed Christopher from his father. It is that order which OCSE appeals to this court.

 In 1993, Arkansas enacted UIFSA, codified at Ark. Code Ann. § 9-17-101 *et seq.* (Repl. 1993); its purpose is "support of the child and enforcement of the same." *Chaisson v. Ragsdale*, 323 Ark. 373, 376, 914 S.W.2d 739, 741 (1996). The chancellor may not consider collateral matters, including visitation, when faced with the issue of enforcement of child support under this uniform act. *Id. See also State v. Robinson*, 311 Ark. 133, 842 S.W.2d 47 (1992); *State v. Kerfoot*, 308 Ark. 289, 823 S.W.2d 895 (1992) (holding that under the Revised Uniform Reciprocal Enforcement of Support Act, the statutory predecessor to UIFSA, collateral matters may not be raised as defenses). UIFSA specifically provides that a chancellor "may not condition the payment of a support order issued under this chapter upon compliance by a party with provisions for visitation." Ark. Code Ann. § 9-17-305(d) (Repl. 1993).

 Appellee argues that the trial court properly denied judgment on the child-support arrearages because of principles of equitable estoppel. However, none of the cases he cites concern the application of UIFSA or its predecessor statutes. In a UIFSA action, visitation issues are collateral matters which burden the child-support determination and run counter to the goal of streamlining the proceedings both procedurally and substantively. *Chaisson v. Ragsdale, supra.*

██ ██ This court reviews chancery cases *de novo* but does not reverse the chancellor's findings unless they are clearly against the preponderance of the evidence. Ark. R. Civ. P. Rule 52(a); *Riddle v. Riddle*, 28 Ark. App. 344, 775 S.W.2d 513 (1989). In the case at bar, the chancellor directly contravened UIFSA's purpose of enforcing the collection of child support. Because UIFSA does not allow us to consider the visitation issue, we must reverse and remand this case to the trial court to determine the proper amount of child-support arrearage due pursuant to the March 27, 1978, California order, taking into consideration the applicable statute of limitations and the propriety of the mother's assignment.

Reversed and remanded for proceedings consistent with this opinion.

ROBBINS, C.J., and BIRD, J., agree.