Stephen CLEMMONS *v.* OFFICE of
CHILD SUPPORT ENFORCEMENT

01-258 47 S.W.3d 227

Supreme Court of Arkansas
Opinion delivered June 21, 2001

332

*Kenneth A. Hodges,* for appellant.

*Phillips & Douthit,* by: *Michael Lamoureux,* for appellee.

JIM HANNAH, Justice. Appellant Stephen L. Clemmons petitions for review from a court of appeals decision affirming the chancery court's order awarding child support to Appellee Office of Child Support Enforcement (OCSE) in the amount of $20,775. Stephen argues on appeal that the chancery court erred in finding that his ex-wife, Sheila, maintained the right to collect child-support arrearages, which she assigned to OCSE, after the couple's son, Christopher, had reached majority. Stephen also argues that the chancery court applied the wrong statute of limitations to allow OCSE to collect the entire amount of child-support arrearages due from a 1978 support order. We affirm the chancery court and the court of appeals.

*Facts*

The chronology of this case has been stated previously in the two prior court of appeals decisions in this case. *See Office of Child Supp. Enforcem't v. Clemmons*, 65 Ark. App. 84, 984 S.W.2d 837 (1999); *Clemmons v. Child Support Enforcement*, 72 Ark. App. 443, 37 S.W.3d 687 (2001). These facts are restated here.

Sheila and Stephen Clemmons were married in the state of Missouri on March 4, 1971, and divorced there on October 16, 1974. One child, Christopher Stephen Clemmons, was born of that union on June 5, 1973. The couple divorced in Missouri on October 16, 1974, and Sheila was awarded custody of Christopher, with Stephen ordered to pay seventy-five dollars per month child support until Christopher entered the first grade, at which time support was to increase to one hundred dollars per month. The custody and support provisions of this decree were modified by the Missouri court on May 7, 1976, with Sheila having custody of the minor child for nine months during the regular school term and Stephen having custody for three months during the summer, with each party having reasonable visitation while the child was in the other's custody. Further, Stephen was ordered to pay seventy-five dollars per month child support, which abated during his three months of custody.

On September 7, 1976, the Washington County, Arkansas, juvenile court placed custody of Christopher with Sheila, apparently based on a dependency-neglect petition filed by Sheila. On September 9, 1976, the juvenile court quashed that order and placed physical custody with Stephen. However, Sheila failed to appear at that hearing with Christopher; Stephen would later learn that she had taken him to California. On November 17, 1976, Stephen also obtained an order from the Missouri court awarding him temporary custody of Christopher.

In February 1977, Stephen located Sheila and Christopher in California, but Sheila refused to allow him any contact or communication with Christopher. Law enforcement officials declined to assist Stephen in gaining physical custody of Christopher, even though he had the Arkansas and Missouri custody orders.

A hearing was held in California in December 1977 on the issues of custody, visitation, and support. Both parties were present

and represented by counsel. On March 27, 1978, an order was entered in the Superior Court of California in the County of Los Angeles acknowledging the Missouri decree as a valid foreign decree and giving it full faith and credit; finding a child-support arrearage of $525.00 from June 1977 through December 1977; placing custody of Christopher with Sheila, with reasonable visitation awarded to Stephen; and modifying Stephen's child-support obligation from seventy-five dollars per month to one hundred twenty-five dollars per month as of January 1, 1978. After the California order was entered, Sheila continued to move around California and continued to refuse any contact between Stephen and Christopher. Stephen did not appeal the California order granting custody to Sheila, nor did he ever pursue a contempt citation concerning her denial of his visitation with Christopher, which would have been the proper forum for these issues.

Christopher turned eighteen on June 5, 1991. In 1993, Sheila assigned her rights to the state of Missouri for assistance in collecting child-support arrearages. After locating Stephen in Arkansas, Missouri initiated an interstate action to enforce Stephen's child-support obligation under the 1978 California award. On February 6, 1995, the Arkansas OCSE filed a request in Pope County, Arkansas, Chancery Court for registration of the California order and a petition to reduce Stephen's unpaid child support to judgment. On November 14, 1995, the Pope County Chancery Court entered the California order as a foreign decree and ordered briefing of two issues: the mother's assignment of rights of her non-minor child, and the proper statute of limitations. On January 22, 1998, the chancellor entered an order estopping OCSE or Sheila from obtaining a judgment and/or attempting to collect any child-support arrearages based upon the fact that Sheila had willfully concealed Christopher from his father.

OCSE appealed this order, and the court of appeals reversed and remanded the case, holding that the chancellor directly contravened the purpose of the Uniform Interstate Family Support Act ("UIFSA") when he refused to allow the collection of past-due support based upon a failure to allow visitation, and ordering that the chancellor "determine the proper amount of child-support arrearage due pursuant to the March 27, 1978, California order, taking into consideration the applicable statute of limitations and the propriety of the mother's assignment."

Upon remand, without elaborating his reasons, the chancellor made the determination at a hearing on August 26, 1999, that, "taking into consideration the applicable statute of limitations and the propriety of the mother's assignment, it is hereby found that the Defendant's child support delinquency to be [sic] the sum of $20,775 as of July 28, 1999." Stephen appealed that ruling, arguing that the chancellor erred (1) in not considering the propriety of Sheila's assignment of child support to OCSE pursuant to the instructions of this court on remand, and (2) in calculating the child-support arrearage. Despite the court of appeals' determination that the chancellor's opinion was "conclusory" and failed to address the issues put before it on remand, and despite the court of appeals recognition that this was an issue of first impression, the court of appeals affirmed the chancellor's ruling, and Stephen petitioned for review to this court arguing the same points on appeal. This court accepted review.

### Standard of Review

■ ■ Upon a petition for review, we consider the case as though it were originally filed in this court. *Davis v. Child Support Enforcement*, 341 Ark. 349, 20 S.W.3d 273 (2000); *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999); *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999); *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998); *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). We have held many times that although we review chancery cases de novo on the record, we will not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Slaton v. Slaton*, 336 Ark. 211, 983 S.W.2d 951 (1999).

### I. Propriety of Sheila's Assignment to Missouri

The first issue before this court is whether Sheila's assignment of her collection rights to Missouri, which then assigned or transferred those rights to Arkansas, was proper. Within this issue is also the question of whether a custodial parent can attempt to collect child-support arrearages for a child who has since reached the age of majority.

### A. Validity of Shelia's Assignment
### to Missouri and Arkansas

■ As an initial issue, it should be noted that Sheila's assignment of her collection rights to Missouri was a valid assignment under Missouri law pursuant to Mo. Ann. Stat. §§ 454.010 *et seq.* In turn, Arkansas recognizes collection orders for other states pursuant to Arkansas's Uniform Interstate Family Support Act found at Ark. Code Ann. §§ 9-17-101-9-17-902 (Repl. 1998). As such, there is no issue regarding the legitimacy of Sheila's assignment to collect arrearages and the transfer of that collection right to OCSE pursuant to Missouri and Arkansas law.

### B. Sheila's Ability to Assign Collection
### Rights to the State

While there is no issue as to the mechanics of Sheila's assignment of her purported rights, the real issue here is whether Sheila actually had rights to assign. Stephen argues that Sheila no longer had the right to pursue support arrearages from him after Christopher turned eighteen in 1991, prior to Sheila's filing for collection. OCSE argues that the right belongs to anyone listed in the applicable statute.

Stephen argues that Ark. Code Ann. § 9-14-105 (Repl. 1998) "Petition for Support" controls and dictates that only Christopher could initiate the action to collect child support from him. This statute states:

> (a) The chancery courts in the several counties in this state shall have exclusive jurisdiction in all civil cases and matters relating to the support of a minor child or support owed to a person eighteen (18) or older which accrued during that person's minority.

> (b) The following may file a petition to require the noncustodial parent or parents of a minor child to provide support for the minor child:

> (1) Any parent having physical custody of a minor child;

(2) Any other person or agency to whom physical custody of a minor child has been given or relinquished;

(3) A minor.child by and through his guardian or next friend; or

(4) The Office of Child Support Enforcement when the parent or person to whom physical custody has been relinquished or awarded is receiving assistance in the form of Aid to Families with Dependent Children, Medicaid, Title IV-E of the Social Security Act — Foster Care, or has contracted with the department for the collection of support.

*(c) Any person age eighteen (18) or above to whom support was owed during his minority may file a petition for a judgment against the nonsupporting parent or parents. Upon hearing, a judgment may be entered upon proof by a preponderance of the evidence for the amount of support owed and unpaid.* (Emphasis added.)

This statute seems to indicate that the people named in section (b) may initiate an action to collect support for a minor child, while section (c) indicates that a child who has reached majority may initiate an action on his or her own behalf.

█ Stephen also argues that Ark. Code Ann. § 9-14-236 (Repl. 1998) "Arrearages — Child support limited — Limitations period" requires that a child who has reached majority, rather than the custodial parent or guardian, must pursue collection of arrearages. This statute states:

(a) As used in this section:

(1) "Action" means any complaint, petition, motion, or other pleading seeking recovery of accrued child support arrearages;

(2) "Moving party" means any of the following:

(A) The custodial parent;

(B) Any person or agency to whom custody of a minor child has been given or relinquished;

(C) The minor child through his guardian or next friend;

(D) A person for whose benefit the support was ordered, within five (5) years of obtaining his majority; or

(E) The Office of Child Support Enforcement when the custodial parent or person to whom custody has been relinquished or awarded is or has been receiving assistance in the form of Aid to Families with Dependent Children or has contracted with the Office of Child Support Enforcement for the collection of support;

(3) "Accrued child support arrearages" means a delinquency owed under a court order or an order of an administrative process established under state law for support of any child or children which is past due and unpaid; and

(4) "Initial support order" means the earliest order, judgment, or decree entered in the case by the court or by administrative process which contains a provision for the payment of money for the support and care of any child or children.

(b) In any action involving the support of any minor child or children, the moving party shall be entitled to recover the full amount of accrued child support arrearages from the date of the initial support order until the filing of the action.

(c) Any action filed pursuant to subsection (b) of this section may be brought at any time up to and including five (5) years beyond the date the child for whose benefit the initial support order was entered reaches the age of eighteen (18) years.

This statute is the applicable statute in this case because OCSE is pursuing collection of support arrearages for support ordered in a prior judgment. Had OCSE sought an initial petition for support against Stephen, Ark. Code Ann. § 9-14-105 would have applied. This statute, which specifically applies to the collection of child-support *arrearages*, indicates that the "moving party" can be the custodial parent, any person or agency to whom custody of a minor child has been given or relinquished, a minor child's guardian or next friend, OCSE when rights have been assigned, *or* the child himself or herself once he or she reaches the age of majority. However, this statute does not indicate whether anyone is the exclusive party to pursue an action.

While Stephen argues that both of these statutes specifically allow only the child, upon majority, to pursue the collection action, Stephen's proposition would require this court to interpret and add language to the statute that is not there. This court reviews issues of statutory construction de novo, as it is for this court to decide what a statute means. *Stephens v. Arkansas School for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000); *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999). In this respect, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.* The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999). In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* The statute must be construed so that no word is left void or superfluous and in such a way that meaning and effect is given to every word therein, if possible. *Id.* If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation. *Id.* Where the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Id.* (citing *State v. McLeod*, 318 Ark. 781, 888 S.W.2d 639 (1994)). Statutes relating to the same subject are said to be in *pari materia* and should be read in a harmonious manner, if possible. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999).

First and foremost, taking into consideration our rules for interpreting statutes, this statute does not place a limitation on who can pursue an action for collection of child-support arrearages from the list of possible parties. In Ark. Code Ann. § 9-14-236, the list of potential moving parties is set off by the word "or" to indicate who the alternative moving parties may be. Had the General Assembly meant to limit child-support arrearage actions brought after the child reaches majority to those brought by the child, we believe that it would have specifically made such a statement in the statute rather than including the child of majority in a list of alternative moving parties.

In addition, our case law supports such a conclusion. In most of our cases, the custodial parent of a minor child sought

child–support arrearages. *See, e.g., Sharum v. Dodson*, 264 Ark. 57, 568 S.W.2d 503 (1978); *Cunningham v. Cunningham*, 297 Ark. 377, 761 S.W.2d 941 (1988); *Johnson v. Lilly*, 308 Ark. 201, 823 S.W.2d 883 (1992); *State Office of Child Sup. Enforcem't v. Terry*, 336 Ark. 310, 985 S.W.2d 711 (1999); *Branch v. Carter*, 326 Ark. 748, 933 S.W.2d 806 (1996); *Durham v. Arkansas Dep't of Human Services*, 322 Ark. 789, 912 S.W.2d 412 (1995). In some cases, the adult child pursued the arrearages. *See, e.g., Fonken v. Fonken*, 334 Ark. 637, 976 S.W.2d 952 (1998); *Chunn v. D'Agostino*, 312 Ark. 141, 847 S.W.2d 699 (1993). In others, the parent has pursued the arrearages even after a child reaches majority. *See Sanderson v. Harris*, 330 Ark. 741, 957 S.W.2d 685 (1997); *Cole v. Harris*, 330 Ark. 420, 953 S.W.2d 586 (1997). In no case has this court held that only the adult child has the right to pursue the arrearage.

▮▮ The strongest support for the proposition that the right to pursue child-support arrearages belongs either to a custodial parent or to the child, whether of majority or not, is *Darr v. Bankston*, 327 Ark. 723, 940 S.W.2d 481 (1997), in which this court allowed the deceased custodial parent's estate to pursue and recover past-due child support from her ex-husband who had custody of the children after the mother's death. The court recognized "the custodial parent's right to unpaid installments of child support," and the estate was entitled to take possession of all of the mother's personal property, which included back child support. *Darr*, 327 Ark. at 725-726. While *Darr* obviously dealt with the recovery of child-support arrearages where the children were still minors, the case indicates that the right to the payments equally belongs to the "custodial parent," the parent who had custody of the children when the support was ordered. Based on *Darr*, "custodial parent" as listed in the statute necessarily must be a designation of the parent who maintains the right to collect the ordered support rather than the parent in whose custody a minor child currently resides. For example, the term "custodial parent" is merely the alternate to "non-custodial parent" for purposes of party recognition in support and custody proceedings. In this case, the 1978 California Order required child support to be paid to Shelia just as in *Darr*. This court in *Sharum, supra,* stated, "[E]ntitlement to payment of child support installments vested in appellant as they accrued, and she was entitled to judgment as a matter of right...." This proposition is further supported in *Chunn*, in which the children upon majority pursued the support arrearages. This court stated, "As we read the

statute it contemplates one support obligation which may be pursued by different persons at different times." *Chunn*, 312 Ark. at 145. These cases indicate that once a child reaches majority, whoever files the collection action first is allowed the right and ability to collect. Finally, the differences between Ark. Code Ann. § 9-14-105 and § 9-14-236 provide further support for this determination. In Ark. Code Ann. § 9-14-105(b), the petitioning party may be "any parent having physical custody of a minor child," while in Ark. Code Ann. § 9-14-236(a), the "moving party" may be the "custodial parent." Again, had the General Assembly meant to confer the right to collect arrearages only upon the "parent having physical custody of a minor child" until the child reached majority, and then only upon the adult child, it clearly would have so stated rather than using the term "custodial parent." Therefore, we determine that Sheila retained the right to pursue child-support arrearages even after Christopher reached age eighteen.

### II. Calculation of Child-support Arrearages

▮ In the second issue on appeal, Stephen argues that the chancery court erred in awarding $20,775.00 in child-support arrearages from the California order establishing support. He argues that the $525.00 awarded in the California order cannot be collected because the ten-year statute of limitations has run since it was reduced to judgment and not collected, and the rest of the pending monthly support can only be collected to ten years prior to February 6, 1995, when OCSE filed the action in Arkansas for collection of past-due support. Actually, the Arkansas statute of limitation bars all claims for child-support arrearages that have accrued prior to March 29, 1986. *See Johnson v. Lilly*, 308 Ark. 201, 823 S.W.2d 883 (1992); *Branch v. Carter*, 236 Ark. 748, 933 S.W.2d 806 (1996). In this case, if the Arkansas statute of limitations governs, then OCSE is entitled to recover all arrearages that accrued between March 29, 1986, and June 5, 1991, Christopher's eighteenth birthday.

OCSE argues in response that California's statute of limitations, and not Arkansas's, applies in this UIFSA litigation because California's statute of limitations is longer and is, therefore, the applicable statute. OCSE argues that because California does not have a statute of limitations for the collection of support arrearages, the entire amount can be collected from the issuance of the original order in June 1977.

 In UIFSA arrearage proceedings, the applicable statute of limitations is the longer of the statute of limitations under Arkansas law or the state issuing the support order. Ark. Code Ann. § 9-17-604(b) (Repl. 1998). Such a determination requires a two-step analysis. First, the court must consider whether there are differing limitations on the time that a custodial parent or child of majority may initiate a proceeding to collect support arrearages. Second, the court must look at the longer of the two statutes allowing how far back collection of support arrearages is allowed.

 On the first issue, both Arkansas and California law allow a child of majority or custodial parent to bring an action for support arrearages at least up to five years after the child turns eighteen, or up through age twenty-three. *See* Ark. Code Ann. § 9-14-236(c); Cal. Fam. Code § 4383 (Repealed in 1993); Cal. Fam. Code § 4502 (1993). Under California law, prior to 1993, a judgment for child support could be enforced by writ of execution without prior court approval until five years after the child reached majority and thereafter only as to amounts that were not more than ten years overdue. Cal. Fam. Code § 4383; *In re Marriage of Garcia*, 79 Cal. Rptr. 2d 242 (Ct. App. 1998). Beyond these time frames, the court had discretion to determine whether to allow enforcement of the judgment and could take into account such considerations as laches or lack of diligence. *Id.* After 1993 in California, upon the repeal of § 4383 by the enactment of § 4502, support judgments did not have to be renewed, and they became "enforceable until paid in full." *Id.* Based on this, because Sheila filed the action here within five years of Christopher's eighteenth birthday, under either Arkansas or California law she timely filed her action to collect arrearages.

The analysis does not end there, however. Of more importance here is how far back the court can go in determining the amount of support due. California does not consider its pre-1993 or post-1993 statutes for enforcement of child-support orders as "statutes of limitation," but instead as statutes providing a procedure for enforcement. *Garcia*; *In re Marriage of Wight*, 264 Cal. Rptr. 508 (1989). Whether the pre- or post-1993 statutes should apply is the first consideration. Certainly, under the post-1993 statute, there is no question that Sheila can collect the entire amount of support because the statute allows collection of the entire amount until paid in full. Cal. Fam. Code § 4502. However, based on the reasoning in *Garcia* that applying a post-1993 statute to a pre-1993 judgment

would be impermissibly retroactive, we believe the pre-1993 statute applies.

■ As noted, § 4383, the pre-1993 statute, allows collection in the five years between majority and age twenty-three by way of a writ of execution without court approval. After age twenty-three, collection can only be had for the ten years prior. Here, obviously, the claim was made within the five years, but Sheila did not have a writ of execution. However, according to the reasoning in *Wight* and *Garcia*, the trial court still retained discretion to determine whether to allow enforcement of the judgment. As such, the chancellor's determination to allow collection of the entire support amount is lawful. Under California law, the entire amount of child support until Christopher's eighteenth birthday was due. Because California allows for collection of the entire child-support arrearage, the law of California is applicable in this UIFSA action. Therefore, we do not find that the chancellor was clearly erroneous in granting the entire amount of child-support arrearage of $20,775.

■ The concurring opinion argues that the trial court should be affirmed by applying the law-of-the-case doctrine because the trial court in its first order seemingly ruled on the issues of the assignment and statute of limitations. However, the doctrine cannot apply in this case. The law-of-the-case doctrine provides that on second appeal the decision of the first appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal, and also of those which might have been, but were not, presented.[1] *Slaton v. Slaton*, 336 Ark. 211, 983 S.W.2d 951 (1999); *Barnhart v. City of Fayetteville*, 321 Ark. 197, 900 S.W.2d 539 (1995); *Vandiver v. Banks*, 331 Ark. 386, 962 S.W.2d 349 (1998); *see also, Alexander v. Chapman*, 299 Ark. 126, 771 S.W.2d 744 (1989). The doctrine of law of the case prevents an issue raised in a prior appeal from being raised in a subsequent appeal. *Vandiver, supra*. The doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review. *Kemp v. State*, 335 Ark. 139, 983 S.W.2d 383 (1998). On the second appeal, the decision of the first

---

[1] It should be noted that while *Slaton* indicates that law of the case extends to issues that were or *could have been* decided in the first appeal, in criminal cases we have held that the issue actually must have been decided explicitly or implicitly before the doctrine can apply. *See, e.g., King v. State*, 338 Ark. 591, 999 S.W.2d 183 (1999), and *Camargo v. State*, 337 Ark. 105, 987S.W.2d 680 (1999).

appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal, and also of those which might have been, but were not, presented. *Griffin v. First Nat'l Bank*, 318 Ark. 848, 888 S.W.2d 306 (1994). The doctrine extends to issues of constitutional law. *Id.*

While the history of this case may seem to trigger this doctrine given the language in the chancery court's 1998 original order, there is a reason why the law-of-the-case doctrine cannot apply in this case. The statements in the chancery court's 1998 order regarding the assignment to OCSE and the statute of limitations are *obiter dictum* and cannot satisfy the requirements of law-of-the-case doctrine.

The chancellor's 1998 order only decided OCSE's inability to collect arrearages due to estoppel, and the statements in the order regarding the assignment and statute-of-limitations issues were *obiter dictum*. As such, those statements do not qualify for recognition under the law-of-the-case doctrine. In *Green v. State*, 343 Ark. 244, 33 S.W.3d 485 (2000), this court discussed the interplay between the law-of-the-case doctrine and *obiter dictum*. The court stated:

> The law-of-the-case doctrine does dictate that a decision made in a prior appeal may not be revisited in a subsequent appeal. *Mode v. State*, 234 Ark. 46, 350 S.W.2d 675 (1961). We have long held that a decision in a prior appeal becomes the law of the case. *Bowman v. State*, 93 Ark. 168, 129 S.W. 80 (1909). This is true even if the decision was wrongly decided. *Rankin v. Schofield*, 81 Ark. 440, 98 S.W. 674 (1905). The conclusion of the court in one opinion becomes the law of the case on subsequent proceedings on the same cause and the matter is res judicata. *Perry v. Little Rock & Fort Smith Railway Cp.*, 44 Ark. 383, 395 (1884). The doctrine requires that matters decided in the first appeal be considered concluded. The doctrine is not inflexible and does not absolutely preclude correction of error, but it prevents an issue already decided from being raised in a subsequent appeal unless the evidence materially varies between the two appeals. *Carmargo v. State*, 337 Ark. 105, 987 S.W.2d 680 (1999).
>
> Courts developed the doctrine to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. *Fairchild v. Norris*, 317 Ark.166, 876

S.W.2d 588 (1994). The doctrine requires that matters decided in a prior appeal be considered concluded. *Camargo v. State*, 337 Ark. 105, 987 S.W.2d 680 (1999); *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996); *Mauppin v. State*, 314 Ark. 566, 865 S.W.2d 270 (1993). While a decision of the court will not be disturbed because it is law of the case under res judicata, the court is not bound by a conclusion stated as obiter dictum, even if couched in terms that infer the court reached a conclusion on a matter. This is so because obiter dictum is mere comment and not a decision of the court, and therefore not binding as the law of the case under res judicata. In an opinion, the court may sustain by comment an argument presented by obiter dictum. *Peeples v. State*, 305 Ark. 338, 808 S.W.2d 331 (1991). However, a comment on the evidence does not rise to a decision or holding by the court. *Smith v. City of Little Rock*, 279 Ark. 4, 648 S.W.2d 454 (1983).

Where discussion or comment in an opinion is not necessary to the decision reached therein, the discussion or comment is an obiter dictum. *Nashville Livestock Common v. Cox*, 302 Ark. 69, 787 S.W.2d 664 (1990). In *Couch v. State*, 274 Ark. 29, 621 S.W.2d 694 (1981), the court noted that even though the opinion stated, as obiter dictum, that upon retrial an instruction on first-degree murder ought to be given, that was not a point in issue and thus not binding. Dicta consists of statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand, and they lack the force of an adjudication. *Garrett v. Andrews*, 294 Ark. 160, 741 S.W.2d 257 (1987). "We point this out so that the dicta in one decision will not be seized on as the ratio decidendi in the next decision. . . ." *McLeod, Comm. Of Revenues v. J. E. Dilworth Co.*, 205 Ark. 780, 171 S.W.2d 62 (1943).

*Green*, 343 Ark. at 250-251. Based on this directive, it is obvious that the findings by the chancery court in the 1998 order regarding the assignment and the statute-of-limitations issue were dicta because they had nothing to do with the court's actual order — that is, that OCSE was estopped from collecting the arrearages due to Sheila's bad acts of concealing Christopher from his father for so many years. In other words, whether the chancery court decided the assignment and statute-of-limitations issues had nothing to do with the court's actual order barring collection of the arrearages. As such, there is no initial order from which Stephen is barred from arguing the issues due to the law-of-the-case doctrine.

The concurring opinion argues that the trial court on remand refused to reopen the issue of assignment, one of the issues placed before it by the court of appeals, and because Stephen failed to cross-appeal initially, he should now be barred from raising the issues here. However, the flaw in this reasoning is highlighted by the fact that the law-of-the-case doctrine applies not to what the trial court decided in its 1998 order, but instead to the court of appeals's first decision.

■ The concurring opinion also argues that in the first appeal, the court of appeals issued a limited remand order instructing the trial court to award arrearages and did not reopen the issues of assignment and limitation in its remand order. The concurring opinion is mistaken. The court of appeals's first decision only included reversal on the estoppel issue with a specific directive to "determine the proper amount of child-support arrearage due pursuant to the March 27, 1978, California order, taking into consideration the applicable statute of limitations and the propriety of the mother's assignment." *Office of Child Supp. Enforcement v. Clemmons*, 65 Ark. App. 84, 984 S.W.2d 837 (1999). That is plain language. The court of appeals directed the trial court to determine the proper amount of child-support arrearage. Because estoppel is not applicable, the trial court had to decide the propriety of the assignment first, and then had to decide the applicable statute of limitations before it could determine the proper amount of child-support arrearages. Those two issues were to be decided by the trial court on remand. Clearly, this directive indicates that the court of appeals did not find that these two issues, which were not necessary to the trial court's finding on estoppel, had been conclusively decided by the trial court to trigger the law-of-the-case doctrine. Otherwise, the court of appeals would have merely directed the trial court on remand to enter the judgment for arrears.

■ The concurring opinion is also mistaken in arguing that the trial court on remand refused to reopen the issue of assignment. The court of appeals did not direct the trial court to take further evidence. The trial court on remand did exactly what the court of appeals instructed it to do. The trial court decided the propriety of the assignment, the applicable statute of limitations, and the amount of child-support arrearages. Those issues were before the trial court, and the trial court decided them. In its second decision from which this petition for review arises, the court of appeals, after setting out the remand directive from the first appeal, stated:

Upon remand, without elaborating his reasons, the chancellor made the conclusory determination that "taking into consideration the applicable statute of limitations and the propriety of the mother's assignment, it is hereby found that the Defendant's child support delinquency to be the sum of $20,775 as of July 28, 1999."

This statement clearly indicates that the court of appeals recognized that it instructed the trial court to consider these issues anew, and then recognized that the trial court had done so. Because the law-of-the-case doctrine only applies to the court of appeals's first decision rather than the trial court's 1998 order, law of the case does not bar our consideration of these issues on the merits in this appeal.

We affirm the chancery court and the court of appeals.

BROWN and IMBER, JJ., concur.

ANNABELLE CLINTON IMBER, Justice, concurring. I agree with the result reached by the majority; however, I would affirm the trial court by applying the doctrine of the law of the case. That doctrine bars consideration in a second appeal of issues that were or should have been decided in the first appeal, where there has been a decision on the merits in the first appeal. *Vandiver v. Banks*, 331 Ark. 386, 962 S.W.2d 349 (1998).[1] According to Justice Holmes, the law of the case merely expresses the practice of courts generally to refuse to reopen what has been decided. *Messenger v. Anderson*, 225 U.S. 436 (1912). The application of the law-of-the-case doctrine is not limited to issues actually raised in prior appeals, because it was developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. *Miller County v. Opportunities, Inc.*, 334 Ark. 88, 971 S.W.2d 781 (1998). For that reason, even those issues that might have been but were not actually presented in the first appeal are barred from reconsideration in the second appeal. *Vandiver v. Banks*, 331 Ark. at 394.

---

[1] One exception to the law-of-the-case doctrine arises where evidence is presented during the period between two appeals that materially varies from the evidence presented prior to the first appeal. In this situation, the law-of-the-case doctrine will not bar the second appeal, whereas otherwise the appellant would have been barred. *Fairchild v. Norris*, 317 Ark. 166, 876 S.W.2d 588 (1994). This exception does not apply to the case at bar because no new evidence has materialized that would substantially change the outcome of this case.

On January 22, 1998, the Pope County Chancery Court entered an Order finding that:

1. the assignment by Mrs. Shelia Clemmons to the Office of Child Support Enforcement was proper;

2. the statute of limitations is ten years unless the action was filed prior to the child becoming 24 years of age, then all arrearages would be collectible; and,

3. regardless of the preceding findings, both Mrs. Clemmons and OCSE were estopped from obtaining a judgment for arrearage in child support because of Mrs. Clemmons' concealment of the minor child from its biological father, Stephen Clemmons.

OCSE appealed the trial court's finding of estoppel. Mr. Stephens filed no cross-appeal from the trial court's findings of proper assignment and statute of limitations. The Court of Appeals determined that the trial court erred in refusing to enforce an order for child support and determine the amount owed in arrearage based upon a theory of estoppel. The appellate court reversed and remanded the case with instructions to the trial court "to determine the proper amount of child-support arrearage due pursuant to the March 27, 1978, California order, taking into consideration the applicable statute of limitations and the propriety of the mother's assignment." *Office of Child Support Enforcement v. Clemmons*, 65 Ark. App. 84, 88, 984 S.W.2d 837, 839 (1999).

Upon remand, the trial court determined that Mr. Stephens owed child support in the amount of $20,757.00 and refused to reopen the issue of assignment. Mr. Clemmons then filed the appeal that is before us today, arguing that the trial court erred in not considering the propriety of Mrs. Clemmons' assignment of child support to OCSE.

An argument that could have been raised in the first appeal and is not made until a subsequent appeal is barred by the law of the case. *Alexander v. Chapman*, 299 Ark. 126, 771 S.W.2d 744 (1989); *McDonald's Corp. v. Hawkins*, 319 Ark. 1, 888 S.W.2d. 649 (1994). When there is no cross-appeal, the order from which cross-appeal is not taken becomes the law of the case. *Van Houten v. Pritchard*, 315 Ark. 688, 870 S.W.2d 377 (1994); *Moore v. Robertson*, 244 Ark. 837, 427 S.W.2d 796 (1968). In *Moore v. Robertson, supra*, Robertson

alleged on cross-appeal that the decision of the trial court in favor of his co-defendants should have enured to his benefit despite his failure to file an answer in the case. The failure to answer ultimately resulted in a default judgment against him. We refused to address the issue because it should have been raised by cross-appeal in the first appeal of the case. In declining to address the merits of Robertson's argument, we stated:

> The case at bar confirms the wisdom of the [law-of-the-case] rule. If the appellee's contention has merit — a point which we do not decide — its assertion on the first appeal would have done away with the necessity for a second trial and a second appeal, with their attendant expenditure of time and money. Such waste can be effectively prevented only by a strict adherence to the principle that points not urged upon the first appeal are not available later on.

*Moore v. Robertson*, 244 Ark. at 839-40. As in *Robertson*, the case at bar demonstrates the wisdom of the law-of-the-case doctrine. Had Mr. Clemmons cross-appealed the trial court's adverse assignment and limitations rulings, those issues could have been addressed in the first appeal and, if successful, would have done away with the necessity for a remand and second appeal. Because Mr. Clemmons failed to cross-appeal the first time around, the trial court's findings with regard to the propriety of the assignment and applicable statute of limitations became the law of the case.

Upon remand, the trial court noted that it had already determined that Mrs. Clemmons' assignment to OCSE was proper and that the action was brought within the applicable statute of limitations. Despite these findings, the trial court denied relief in the first trial based upon the affirmative defense of estoppel. The majority concludes that the finding of estoppel rendered the first two findings unnecessary *dicta* not subject to the law-of-the-case doctrine. That conclusion ignores the defensive nature of an estoppel claim.

"Equitable estoppel is a judicial remedy by which a party may be precluded by its own act or omission from asserting a right to which it otherwise would have been entitled, or pleading or proving an otherwise important fact." 28 AM.JUR.2d *Estoppel and Waiver*, § 28 (2000). The trial court's findings effectively determined that OCSE had a claim that could properly be asserted. Thus, contrary to the majority's conclusion, the findings *did* have something to do with the trial court's order and were not merely *obiter dicta*. The

affirmative defense of estoppel would have been moot if OCSE had no right to be asserted. The trial court's findings as to assignment and limitations were, therefore, integral to its ultimate holding and not merely comments on the evidence.

Mr. Clemmons did not raise these issues in the first appeal, but sought to reopen the issues upon remand to the trial court based upon the court of appeals' instructions. The trial court refused to reopen the issues in the proceedings on remand, wherein the following exchange occurred:

> BY THE COURT: Okay. Well, Mr. Hodges basically wants to relitigate the findings that I made earlier, and says that the propriety of the assignment, or the assignment of the interest was improper, and that the statute of limitations has run because of the improper assignment. I think that's basically what we are getting to.
>
> MR. HODGES: Yes, sir. I was just following the decision of the Court of Appeals.
>
> BY THE COURT: Well, I don't agree with either one of you, and I don't want to cut off any argument that you might want to make, but let me tell you how I see this. In my decision — Letter decision to you I found that the statute of limitations was ten (10) years. Well, that would cause — it's in excess of the time that would cut off some of the support period. And based on that the arrearages, ten years of arrearages would be Fifteen Thousand dollars ($15,000.00). *I had already made my decision on the issues that you raised again, Mr. Hodges, in regard to the propriety of the assignment and the statue (sic) of limitations, and I'm not going to change my mind about that, nor do I want to hear anymore proof on that. I think that all was produced at the trial.*
>
> Now, is there anything else?
>
> MR. HELMS: Your Honor, I — the, uh — the letter ruling that you referred to—
>
> BY THE COURT: uh-huh.
>
> MR. HELMS: —I guess I'm reading that wrong. You said under the statute of limitations in this case is ten (10) years, unless the

action was filed prior to the child becoming twenty-four (24) years of age—

BY THE COURT: Yes.

MR. HELMS: —and then all arrearage accrued would be collectible.

\* \* \*

BY THE COURT: Unless I'm wrong about his age, I believe he was — he was born on June 5th of '73, and it was filed in '95. That's twenty-two (22). You may be right, Mr. Helms.

MR. HELMS: I never claimed to be good at math, your Honor.

BY THE COURT: Well, I was doing it on my — in my head, and I put it on the calculator. He would have been twenty-two (22). So in that case your figures as to the arrearages would be correct....

(Emphasis added.) Thus, the trial court recognized that the issues of assignment and limitations had been conclusively determined at the first trial and did not reopen those issues in its deliberations on remand. Taking into account the propriety of the assignment and the applicable statute of limitations as had previously been determined, the trial court awarded arrearages. By doing so, the trial court followed the directive of the appellate court, which, contrary to the majority's conclusion, did not reopen the issues of assignment and limitations in its remand order.

The court of appeals issued a limited remand order, instructing the trial court to determine "the proper amount of child-support arrearage...." In doing so, the appellate court did instruct the trial court to "*tak[e] into consideration* the propriety of the assignment and the proper statute of limitations." The appellate court did *not* instruct the trial court to *redetermine* the propriety of the assignment and the proper statute of limitations. Those issues had already been determined. The remand order issued by the court of appeals was no more than a directive to the trial court to apply the findings it had previously made in determining the proper amount of child support to award in arrearage. If Mr. Clemmons thought those

findings were made in error, he could have submitted the issues to the court of appeals for determination on cross-appeal and preserved those issues in case he lost on direct appeal. He failed to do so. Mr. Clemmons cannot now reopen findings that could have been addressed in the first appeal of this matter simply because he is dissatisfied with the manner in which those findings are now being applied.

Because I believe that the law-of-the-case doctrine bars the appellant from raising in this second appeal an issue that could have been raised in the first appeal, I concur with the majority in affirming the trial court.

BROWN, J., joins in this concurrence.