Michael E. POLLARD  *v.*  MERIDIAN AGGREGATES, *et al.*

CA 04-218                                           193 S.W.3d 738

Court of Appeals of Arkansas
Division I
Opinion delivered September 29, 2004

*Walters, Hamby & Verkamp*, by: *Michael Hamby*; and *Lawrence Fitting*, for appellant.

*David L. Pake*, for appellee Second Injury Fund.

JOHN B. ROBBINS, Judge. Appellant Michael Pollard sustained a compensable injury to his lower back while working for appellee Meridian Aggregates in late March 2000. On October 10, 2000, he underwent a decompressive lumbar laminectomy at L2-3 and L3-4. Although Meridian Aggregates accepted responsibility for medical benefits and temporary total disability benefits, it controverted Mr. Pollard's claim to benefits for a permanent anatomical impairment and permanent wage loss. Because Mr. Pollard had a pre-existing back condition and had two prior surgeries, appellee Second Injury Fund was made a party to the case.

In determining whether Mr. Pollard was eligible for permanent benefits, the Workers' Compensation Commission applied Ark. Code Ann. § 11-9-102(4)(F)(ii) (Supp. 2003), which provides:

> (ii)*(a)* Permanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment.
>
> *(b)* If any compensable injury combines with a preexisting disease or condition or the natural process of aging to cause or prolong disability or a need for treatment, permanent benefits shall be payable for the resultant condition only if the compensable injury is the major cause of the permanent disability or need for treatment.

"Major cause" is defined as more than fifty percent of the cause, and a finding of major cause shall be established according to the preponderance of the evidence. Ark. Code Ann. § 11-9-102(14) (Supp. 2003). The Commission found that Mr. Pollard had a preexisting stenosis condition that was asymptomatic prior to the work injury, and that the work injury caused the stenosis to become symptomatic, resulting in surgery. The Commission concluded:

> While it does not appear that the Arkansas courts have ever addressed this precise question stated in this precise manner, we understand Section 102(4)(F)(ii)(a) to require the claimant to establish that a work injury in fact caused some degree of identifiable abnormality at issue, and that the claimant has not established his burden of proof where the preponderance of the evidence instead establishes that the work injury only aggravated a preexisting stenosis condition. *Accord Needham v. Harvest Foods*, 64 Ark. App. 141, 987 S.W.2d 141 (1998). Since the claimant has failed to establish by a preponderance of the evidence that his work-related injury caused the stenosis which required surgery, we find that the claimant has failed to establish that his compensable injury was the major cause of [his permanent anatomical impairment].

Based on its decision that Mr. Pollard failed to establish that he sustained a compensable anatomical impairment, the Commission also denied his claim for permanent disability benefits.

Mr. Pollard now appeals, arguing that the Commission erred in finding that he failed to prove that his work injury was the major cause of his impairment rating. Because the Commission denied benefits pursuant to its finding that the claimant failed to show entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *See Daniels v. Arkansas Dep't of Human Servs.*, 77 Ark. App. 99, 72 S.W.3d 128 (2002). We agree with Mr. Pollard that the Commission's opinion fails to display a substantial basis for denying permanent benefits, and we reverse.

Mr. Pollard testified that he began working for Meridian Aggregates in 1999 and that he was required to operate various types of equipment. He stated that in March 2000 he was operating a track hoe and that the whipping action of the track hoe began to aggravate his back. Mr. Pollard stated that his back pain continued

to get worse as a result of his job duties. He testified that by April 4, 2000, it got to the point where he could not even straighten up, and his employer told him to take off work until he got the problem fixed. Mr. Pollard visited a series of doctors, and ultimately came under the care of Dr. Guy Danielson, who performed the decompressive lumbar laminectomy at L2-3 and L3-4 on October 10, 2000.

Mr. Pollard testified that he had prior back problems in 1985 related to the L4-5 and L5-S1 discs. As a result of these problems, Dr. Danielson performed a decompressive lumbar laminectomy and fusion. Mr. Pollard testified that after the 1985 surgeries he was off work for almost a year. However, he indicated that the surgeries were successful, and that after returning to work he had no further soreness or problems with his back until March 2000. During this time span, he worked at different jobs including as a security guard, logger, and equipment operator. Mr. Pollard maintained that his back did not cause him to miss any work between 1986 and 2000.

Mr. Pollard testified that, since his most recent injury, he has experienced numbness and pain. He stated that he cannot stand or sit for long periods of time and uses a cane to walk. Mr. Pollard stated that he is physically unable to return to any of his prior jobs, and he could think of no job that he could perform on a full-time basis.

Mr. Pollard argues on appeal that the Commission erred in finding, as a matter of law, that he failed to prove his compensable injury was the major cause of his impairment that resulted from the October 10, 2000, surgery. He contends that this was a fact question to be considered by the Commission, and that he established the major-cause requirement by a preponderance of the evidence.

In support of his argument, Mr. Pollard cites *Wal-Mart Stores, Inc. v. Westbrook*, 77 Ark. App. 167, 72 S.W.3d 889 (2002). In that case, the appellee suffered a work-related aggravation of a pre-existing rotator-cuff tear. The claimant's treating physician, Dr. Lipke, assigned a 30% impairment rating to the body as a whole, and gave the opinion that 10% of the impairment was caused by the work-related injury, and 90% by the pre-existing injury. The Commission awarded compensation for a 3% impairment, and in affirming we stated, "Dr. Lipke's exacting testimony provided the Commission with a preponderance of the evidence

from which to determine that the compensable injury was the major cause of appellee's 3% impairment." *Wal-Mart Stores, Inc. v. Westbook*, 77 Ark. App. at 173, 72 S.W.3d at 893.

In light of our decision in *Wal-Mart Stores, Inc. v. Westbrook*, *supra*, we agree that the Commission erred in finding that an aggravation of a pre-existing condition is not capable of meeting the major-cause requirement. Moreover, the evidence in this case demonstrates that the March 2000 work-related aggravation was the major cause of some anatomical impairment, and there is no evidence to the contrary.

While it is undisputed that Mr. Pollard had a pre-existing back condition, this condition was causing him no problems prior to the March 2000 compensable injury. On September 6, 2000, Dr. Danielson directly addressed causation and reported, "The patient was relatively [a]symptomatic prior to his injury, therefore, the injury would be considered the cause of his present condition."[1] It is clear that the need for surgery and resulting impairment would not have occurred but for the work-related aggravation.

The only physician to assign an impairment rating in this case was Dr. Kent Hensley. In a May 14, 2002, letter, Dr. Hensley stated:

> This patient has had a spinal fusion with two additional surgeries at a total of five levels. This results in a 19% permanent partial impairment of the whole man. He has loss of range of motion that results in a 14% permanent partial impairment of the whole man. He has no radicular symptomatology or radicular signs. Combining the above according to the Guides results in a total of 30% permanent partial impairment of the whole man. In my opinion apportionment is appropriate. As a result of his prior two surgeries, the patient is felt to have a 15% permanent partial impairment of the whole man. As a result of his more recent surgery following his claimed injury during his employment for Meridian Aggregates, he is felt to have an additional 15% permanent partial impairment of the whole man regarding his lumbar spine.

In response to a letter from Meridian Aggregates' counsel, Dr. Hensley wrote on August 28, 2002:

---

[1] Dr. Danielson's report contains the word "symptomatic," but by context this is obviously a typographical error.

Please note that previously I had combined 19% and 15% according to the guides, which gave only 30% as provided by the table in the guides. Given that range of motion is not to be utilized he; therefore, is felt to have a total of 19% permanent partial impairment of the whole man regarding his lumbar spine. According to your note it is also a fact under Arkansas law that an injury is compensable only if it is the "major cause" of the disability or impairment. Major cause is defined as greater than 50% of the cause. Clearly the "major cause" of this patient's disease process was his preexisting disease. In my opinion his preexisting disease accounted for 80% of his disease process and at most 20% was as a result of any aggravation secondary to the "jarring" that occurred during his employment. Therefore, under Arkansas law, it is my opinion that his claimed injury is not compensable based on the above instructions.

Dr. Hensley's first letter indicates that the most recent surgery resulted in an impairment rating independent of the prior surgeries. In his second letter, Dr. Hensley asserts that appellant's "preexisting disease accounted for 80% of his disease process," but this does not resolve whether or not the compensable injury was the major cause of an impairment. Significantly, Mr. Pollard's back disease did not require surgery, or any other medical treatment, prior to the compensable aggravation.

While the Commission relied on *Needham v. Harvest Foods*, 64 Ark. App. 141, 987 S.W.2d 141 (1998), in reaching its decision to deny benefits, that case is distinguishable. In *Needham v. Harvest Foods, Inc.*, we affirmed the denial of permanent benefits where the appellant was given a 4% anatomical impairment rating for a condition that predated the aggravation. In the present case, there is no evidence that Mr. Pollard was assigned any rating for his pre-existing stenosis, and there is evidence that his impairment resulted from the aggravation that caused the need for surgery.

Appellee Second Injury Fund argues that the Commission's opinion must be affirmed pursuant to Ark. Code Ann. § 11-9-704(c)(1)(B) (Repl. 2002), which provides, "Any determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings." However, we disagree because there were objective findings to support an impairment. Spinal stenosis, or narrowing of the spine, was detected on a myelogram and CT scan, and this finding

clearly is not within the voluntary control of the patient. Furthermore, decompression surgery was performed October 10, 2000, to provide Mr. Pollard some relief.

We reverse and remand this case because the Commission erred in finding that Mr. Pollard's compensable aggravation was not the major cause of a physical impairment. On remand, it is within the Commission's authority to assess its own impairment rating using the AMA *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), rather than rely solely on its determinations of the validity of the ratings assigned by a physician. *See Avaya v. Bryant*, 82 Ark. App. 273, 105 S.W.3d 811 (2003). We direct the Commission to Table 75 on page 113 of the AMA *Guides*, where it prescribes an impairment rating of 8% for spinal stenosis treated by a single-level lumbar decompression, without fusion and without residual signs and symptoms. Notably, the applicable AMA *Guides* provide no permanent impairment rating for spinal stenosis that has not been operated on. Because we reverse on the issue of anatomical impairment, the Commission must also address Mr Pollard's argument that he is entitled to permanent wage-loss disability.

Reversed and remanded.

GRIFFEN and BAKER, JJ., agree.