Ronald HICKMAN *v.* KELLOGG, BROWN & ROOT,
Pacific Employers Insurance Company, Second Injury Fund, and
Death & Permanent Total Disability Fund

07–680                                              277 S.W.3d 591

Supreme Court of Arkansas
Opinion delivered February 28, 2008

*Gregory Ross Giles*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *James C. Baker, Jr.* and *Kimberly D. Young*, for appellees Kellogg, Brown & Root and Pacific Employers Insurance Company.

*David L. Pake*, for appellee Second Injury Fund.

J IM GUNTER, Justice. This appeal arises from a petition for review filed by Appellee Kellogg, Brown & Root from an unpublished decision of the Arkansas Court of Appeals, *Hickman v. Kellogg, Brown & Root*, 372 Ark. 501, 277 S.W.3d 591 (2007), which affirmed in part and reversed in part a decision of the Arkansas Workers' Compensation Commission (Commission). We granted Kellogg's petition for review, and we affirm the Commission's decision.

Appellant Ronald Hickman worked for Kellogg, the employer, as a precision millwright repairing large machinery. On April 26, 2002, while walking across some machinery, Hickman slipped on some oil and fell, hitting his right knee against a platform and falling on his back. He testified that he was "hurting all over" and noticed swelling and pain in his knee. When this injury occurred, Hickman had worked for Kellogg for less than one week.

On April 28, 2002, Hickman sought medical treatment for his injuries at Little River Memorial Hospital in Ashdown. The emergency room notes stated that Hickman complained of pain in his right knee to his foot but made no mention of back pain. Swelling was noted in the right knee, and x-rays revealed that he had severe multi-compartment osteoarthritis, but there were no findings of acute traumatic injury. He was placed on medications and went back to work where he was placed on light duty. Two days later, he sustained "another slip" and has been out of work

since that time. Hickman then sought treatment at the emergency room at Morehouse General Hospital in Monroe, Louisiana. There, he relayed the April 25, 2002 injury involving the twisting of the right knee and lower back, but the emergency-room notes mentioned an old knee injury and chronic back pain.

Kellogg accepted the knee injury as compensable. On June 5, 2002, Hickman saw Dr. Sidney Bailey at the Orthopaedic Clinic of Monroe, Louisiana for both the knee injury and back pain. Dr. Bailey noted that Hickman presented with "an immobilizer on the right leg" and stated that he had pain "in his back all of the way down into his right leg." Dr. Bailey recommended electromyography of the lower extremities and Ultracet for pain.

On June 20, 2002, Hickman was involved in a motor vehicle accident and sought emergency-room treatment for pain in his left arm, numbness in his left hand, back pain, and headaches. In Dr. Bailey's notes, dated July 31, 2002, he noted that he did not recommend total knee replacement at that time "primarily due to the patient's activity and age." An MRI report, dated August 15, 2002, revealed that there was "small joint effusion" and degenerative arthritic changes within the knee. Dr. Bailey noted in a follow-up progress report that an arthroscopic debridement would have provided Hickman limited temporary relief, but he would eventually require knee replacement. In a subsequent progress report, dated September 19, 2002, Dr. Bailey noted that he would "certainly attempt to delay a knee replacement as the last option." A CT scan of the lumbar spine, performed on October 10, 2002, revealed large disk bulges at L 1-2 and L 2-3, as well as surgical changes in the rest of the spine. Hickman later sought treatment for his back pain, and on May 28, 2003, Dr. Bernie McHugh performed back surgery, a procedure for which Kellogg accepted and paid. Kellogg terminated Hickman's indemnity benefits on October 28, 2003.

On March 12, 2004, Hickman sustained additional, severe, closed-head injuries in a second motor-vehicle accident in which his wife was killed. Both parties stipulated that this accident did not aggravate Hickman's back or knee, and both parties stipulated that he was not entitled to temporary total disability benefits for his work injuries between March 12, 2004, through May 25, 2004. On May 25, 2004, Dr. Earl Peeples filed an independent medical evaluation in which he stated that Hickman had a "long history of back trouble" prior to his fall in April 2002. Prior to his compensable injury, as a result of a prior accident involving a dump truck,

Hickman had numerous back surgeries, a prior knee surgery, and a preexisting degenerative disease in his back and knee. In August of 2004, Hickman was evaluated for cervical problems resulting from his March 2004 automobile accident. On September 29, 2004, Hickman underwent a right total-knee-replacement surgery that Kellogg accepted and paid as compensable. Kellogg subsequently challenged the permanent impairment rating of thirty percent to the lower extremity assigned by Dr. Bailey for the knee surgery. However, Dr. Bailey agreed that, by the time of his surgery, any evidence of Hickman's contusion from the April 2002 injury was gone.

Hickman filed a complaint with the Commission. On December 1, 2005, a hearing was held, and the parties stipulated to the following facts: (1) that the Commission had jurisdiction of the claim; (2) that the employee/employer/carrier relationship existed at all relevant times; (3) that on April 26, 2002, Hickman sustained a compensable injury to his right knee; (4) that Kellogg accepted this knee injury as compensable and paid benefits; (5) that Hickman reached the end of his healing period for both his right knee and back injuries no later than May 4, 2005; and (6) that Hickman earned wages sufficient to entitle him to a compensation rate of $425.00 for total disability benefits. At the hearing, the parties further stipulated (1) that Hickman was paid temporary-total-disability benefits through October 28, 2003; (2) that Kellogg was entitled to a credit for any temporary-total-disability payments made after October 28, 2003; (3) that Hickman earned wages sufficient to entitle him to a compensation rate of $319 for permanent partial disability benefits; (4) that Hickman was involved in a motor-vehicle accident on March 12, 2004; and (5) that from March 12, 2004, through May 25, 2004, the motor-vehicle accident was an independent intervening cause such that Hickman would not be entitled to temporary-total-disability benefits for that two-month period of time. On January 25, 2006, the administrative law judge (ALJ) entered an order finding that Hickman had proven by a preponderance of the evidence that he sustained permanent impairment of 30% to the knee; that he proved entitlement to permanent-partial disability benefits of 30% for his knee; that his healing period for his knee began on October 28, 2003, and ended on May 4, 2005; that he failed to prove his compensable injury was the major cause of his permanent disability; and that he failed to prove he sustained a compensable back injury. Kellogg appealed the decision of the ALJ.

On October 6, 2006, the Commission ruled that Hickman failed to prove that his compensable injury was the major cause of the necessary knee-replacement surgery and subsequent 30% impairment rating assigned by Dr. Bailey. The Commission also determined that Hickman failed to prove that he was totally and permanently disabled as a result of any compensable injury. Hickman appealed the Commission's decision to the Arkansas Court of Appeals.

In *Hickman, supra,* the court of appeals reversed the portion of the Commission's order denying permanent-partial-disability, temporary-total-disability, and permanent-total-disability benefits and remanded for further proceedings in light of the parties' stipulations. The court reasoned that because the parties had stipulated that Hickman's knee injury was compensable, Kellogg could not avoid responsibility for the surgery and the impairment rating. Further, the court of appeals affirmed the Commission's determination that Hickman failed to prove that he suffered a compensable back injury on April 26, 2002. The court reasoned that there was substantial evidence to support the Commission's finding that Hickman's back condition was the result of prior back surgeries and degenerative conditions. *Id.*

On June 25, 2007, Kellogg filed a petition for review with our court. In its petition, Kellogg argues that the court of appeals' decision conflicts with prior case law and Ark. Code Ann. § 11-9-102(4)(F)(ii)(a) (Supp. 2007). Specifically, Kellogg asserts that the court of appeals ignored the two-prong analysis requirement of (1) whether there is a compensable injury and (2) whether that compensable injury was the "major cause" of the impairment. On October 14, 2007, we granted Kellogg's petition for review. After granting a petition for review, this court considers the case as if it had originally been filed in this court. *Riddle v. Udouj,* 371 Ark. 452, 267 S.W.3d 586 (2007).

### I. "Major cause" of the knee injury

For his first point on appeal, Hickman argues that the Commission erred in finding that he failed to prove by a preponderance of the evidence that he sustained an impairment rating of 30% to his lower extremity as a result of his compensable knee injury. Specifically, Hickman asserts that the Commission incorrectly concluded that he failed to prove that, but for his knee injury in 2002, he would not have required a total knee replacement surgery.

In response, Kellogg argues that the Commission properly ruled that Hickman's compensable knee injury was not the major cause for his knee-replacement surgery. Kellogg contends that Hickman's preexisting condition, not the April 26, 2002 incident, was the major cause of his right-knee replacement, and he should not have been entitled to permanent-disability benefits.

The Second Injury Fund requests that we affirm the Commission's rulings, as Hickman only proved a contusion, or bruise, that he sustained from the April 28, 2002 compensable injury.

In appeals involving claims for workers' compensation, our court views the evidence in a light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Moncus v. Billingsley Logging*, 366 Ark. 383, 235 S.W.3d 877 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.* Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Id.*

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Ark. Dep't of Health*, 343 Ark. 255, 33 S.W.3d 151 (2000). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Arbaugh v. AG Processing, Inc.*, 360 Ark. 491, 202 S.W.3d 519 (2005).

A compensable injury, found in Arkansas Code Annotated section 11-9-102(4)(A)(i), is defined as "[a]n accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is

'accidental' only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]" A compensable injury must be established by medical evidence supported by objective findings, which are findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(4)(D) and (16) (Supp. 2007). Additionally, permanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment. Ark. Code Ann. § 11-9-102(4)(F)(ii)(a) (Supp. 2007). The term, "major cause," means more than fifty percent of the cause, which must be established by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(14)(A) & (B) (Supp. 2007). Thus, in order for Hickman to be entitled to permanent benefits, he was required to show: (1) that he suffered an injury arising out of and in the course of his employment; (2) that the injury was caused by a specific incident; (3) that the injury caused internal or external physical harm to his body; (4) that the injury is supported by objective findings; (5) that the injury was the major cause of the disability or need for medical treatment. Ark. Code Ann. § 11-9-102.

▮ Here, the first four factors are supported by the evidence and the parties' stipulations. First, Hickman suffered the compensable injury while at the workplace. Second, the injury was caused by slipping on the oil spill. Third, the accident caused an injury to his knee that required him to seek medical treatment. Fourth, this injury was stipulated by the parties as compensable. With regard to the fifth factor, the key issue is whether, pursuant to Ark. Code Ann. § 11-9-102(4)(F)(ii)(a), Hickman's compensable knee injury, stemming from his work-related April 26, 2002 accident, was the "major cause" of his resultant impairment rating.

In the case *sub judice*, there was substantial evidence that Hickman had a preexisting degenerative knee condition. Dr. Sid Bailey, Hickman's treating physician, testified that he examined Hickman's right knee on June 5, 2002, and Hickman had "significant past history" of a "previous injury to that knee" from a dump-truck accident in 1984. Hickman had a previous right-knee surgery, a healed surgical scar, and "mild to moderate synovitis [inflammation] and pain with any attempted active or passive range of motion." According to Dr. Bailey's testimony, Hickman's range of motion was restricted to "thirty percent estimated overall." Dr. Bailey also testified that x-rays revealed "moderate to severe post-traumatic degenerative arthritis with no fracture." He further testified that Hickman's arthritis, as shown on the x-ray,

would have existed prior to his April 25, 2002 injury. The arthritis shown on the x-ray included bone spurs and "narrowing."

Dr. Bailey also testified about the findings of the MRI to Hickman's right knee. According to Dr. Bailey's interpretation of the MRI, the "medial meniscus and also the ACL [anterior cruciate ligament]" were absent from the knee prior to the accident on April 25, 2002. He speculated that they were removed by surgery or the knee was injured prior to that time. He added that "[t]he ACL . . . gives stability to the knee so that you don't plant, pivot, turn and collapse with a trick knee that you've seen. And the medial meniscus also gives stability and functions as a pad, if you will, cushion or support between the two bones the femur and the tibia." Based upon these findings, Dr. Bailey concluded that Hickman had a "painful and very inefficient right knee." Dr. Bailey read the report of Dr. John Ledbetter, an anaesthesiologist with a fellowship in pain management, who testified that the contusion and "all physical evidence" from Hickman's work-related injury resolved itself by the time Hickman's knee-replacement surgery took place on September 29, 2004. Finally, in the following colloquy, Dr. Bailey admitted that Hickman's "severe preexisting degenerative changes" in his knee were the major cause of his surgery:

> Q: Doctor, using Mr. Giles's definition of major cause supplied to you in this letter as being more than fifty percent of the cause it remains your opinion today as you told me earlier that Mr. Hickman's severe preexisting degenerative changes of the right knee was the major cause of the surgery and his impairment rating, is that correct.
>
> A: Yes.
>
> Q: And this is in your opinion to a reasonable degree of medical certainty?
>
> A: Yes.

Hickman relies upon *Pollard v. Meridian Aggregates*, 88 Ark. App. 1, 193 S.W.3d 738 (2004), for the proposition that "[t]he major cause requirement is satisfied where a compensable injury aggravates an asymptomatic preexisting condition such that the condition becomes symptomatic and requires treatment." However, Hickman's argument is misplaced because, unlike the appellant in *Pollard*, there was evidence that his knee caused him

problems prior to the April 2002 compensable injury, particularly in light of his prior knee surgery, degenerative arthritis, and absence of the medial meniscus and the ACL prior to the surgery. Further, there is no evidence that the need for Hickman's knee-replacement surgery and the resulting impairment would not have occurred but for the work-related injury.[1]

Based upon the foregoing analysis, as well as our standard of review in viewing the evidence in a light most favorable to the Commission's decision, we conclude that there was substantial evidence to support the Commission's finding that Hickman failed to prove that the April 2002 incident was the major cause of his total-knee-replacement surgery and resulting impairment rating. Accordingly, we affirm the Commission's decision on this point.

## II. Temporary-total-disability benefits for the knee injury

For his second point on appeal, Hickman argues that the Commission's decision to limit the award for temporary total disability is not supported by the evidence. Specifically, Hickman contends that the Commission erred in reversing the ALJ and in awarding benefits from September 29, 2004, the date of his knee-replacement surgery, through May 4, 2005, the date the parties stipulated that Hickman reached the end of his healing period for his right knee and back. Hickman asserts that the Commission should have awarded temporary-total-disability benefits from October 28, 2003, the date that Hickman's total-disability benefits were terminated, through May 4, 2005.

To receive temporary-total-disability benefits, Hickman had to prove by a preponderance of the evidence that he was within a healing period and was totally incapacitated from earning wages. *Searcy Industrial Laundry, Inc. v. Ferren*, 92 Ark. App. 65, 211 S.W.3d 11 (2005). When an injured employee is totally incapacitated from earning wages and remains in his healing period, he is

---

[1] We note that when a compensable injury combines with a preexisting condition to cause the need for treatment, such as knee surgery, permanent benefits are payable for the resulting impairment *only* if the injury is the major cause of the permanent disability or need for treatment. Ark. Code Ann. § 11-9-102(4)(F)(ii)(b) (Supp. 2007) (emphasis added). Thus, the evidence of a causal connection between the employment-related injury and the need for surgery, which was sufficient for purposes of determining the compensability of the knee injury and the knee surgery, did not automatically resolve the key issue in determining entitlement to permanent benefits: whether the compensable knee injury was the *major* cause of Hickman's eventual need for a total knee replacement.

entitled to temporary-total disability. *Id.* The healing period ends when the employee is as far restored as the permanent nature of his injury will permit, and if the underlying condition causing the disability has become stable and if nothing in the way of treatment will improve that condition, the healing period has ended. *Id.* The determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence. *Id.* These are matters of weight and credibility, and thus lie within the exclusive province of the Commission. *Id.*

In the present case, the Commission modified the ALJ's findings and ruled that Hickman reached the end of his first healing period for his right knee before October 28, 2003, and it was not until September 29, 2004, that he underwent total knee-replacement surgery, when a second healing period began. The Commission awarded these benefits from September 29, 2004, through May 4, 2005.

We agree with the Commission's findings. Here, while it is true that Hickman did not return to work after October 28, 2003, there was substantial evidence to reflect that Hickman reached the end of his first healing period before October 28, 2003. Hickman's compensable injury occurred on April 26, 2002. In a progress note, dated March 5, 2003, Dr. Bailey opined that Hickman's right-knee condition was due to post-traumatic degenerative arthritis and that he would need knee-replacement surgery "at some point." Dr. Bailey noted in another progress note, dated September 2, 2003, that the only procedure that would give him relief would be a right-knee replacement. Additionally, in a letter dated March 10, 2004, Dr. Bailey wrote that "knee replacement surgery is necessary as Mr. Hickman has marked post-traumatic degenerative arthritis of the right knee and has failed other nonsurgical treatment options." Throughout this time period, Hickman suffered numerous problems with chronic back pain and had previously undergone multiple lumbar surgeries. For these reasons, we conclude that the Commission correctly determined that Hickman's right-knee condition "plateaued" well before the last date of his employment on October 28, 2003, and that the Commission correctly limited the award for temporary-total-disability to the time period after his knee-replacement surgery from September 29, 2004, through May 4, 2005. Accordingly, we affirm on this point.

### III. Total-permanent-disability benefits for the back injury

For his third point on appeal, Hickman argues that the Commission erred in finding that he did not have a compensable back injury and that he failed to prove total-permanent disability. Specifically, he contends that prior to the April 26, 2002 incident, no doctor identified a back problem at the L1-2 or L2-3 levels, and that the accident aggravated his condition. Kellogg counters by arguing that Hickman failed to prove that he sustained a compensable back injury or permanent total disability. Kellogg asserts that there is substantial evidence supporting the Commission's finding that Hickman's back injury was the result of a preexisting degenerative disc disease and prior back surgeries.

Permanent benefits are only awarded upon a determination that the compensable injury was the major cause of a disability or impairment. Ark. Code Ann. § 11-9-102(4)(F)(ii)(a). Permanent impairment, which is usually a medical condition, is any permanent functional or anatomical loss remaining after the healing period has been reached. *Ouachita Marine v. Morrison*, 246 Ark. 882, 440 S.W.2d 216 (1969). An injured employee is entitled to the payment of compensation for the permanent functional or anatomical loss of use of the body as a whole whether his earning capacity is diminished or not. *Id.* In the case of *Wilson & Co. v. Christman*, 244 Ark. 132, 424 S.W.2d 863 (1968), we stated that the Commission is "not limited, and never has been limited, to medical evidence only in arriving at its decision as to the *amount* or *extent* of permanent partial disability suffered by an injured employee as a result of injury." It is the duty of the Workers' Compensation Commission to translate the evidence on all issues before it into findings of fact. *Gencorp Polymer Products v. Landers*, 36 Ark. App. 190, 820 S.W.2d 475 (1991).

Regarding an aggravation, an employer takes the employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable. *See Parker v. Atlantic Research Corp.*, 87 Ark. App. 145, 189 S.W.3d 449 (2004). A preexisting disease or infirmity does not disqualify a claim if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability for which workers' compensation is sought. *Homes v. Beard*, 82 Ark. App. 607, 120 S.W.3d 160 (2007) (citing *Nashville Livestock Comm. v. Cox*, 302 Ark. 69, 787 S.W.2d 664 (1990)). An aggravation is a new injury resulting from an independent incident, and being a new injury

with an independent cause, it must meet the definition of a compensable injury in order to establish compensability for the aggravation. *Id.*

We agree with the Commission's decision that Hickman failed to prove that he suffered a compensable back injury on April 26, 2002. Hickman testified that he first injured his back in 1984 in a work-related injury. Subsequently, he underwent two neck surgeries and four back surgeries. Additionally, in May of 1997, Hickman sustained another work-related injury to his shoulder and hip, but medical records reflected that he received extensive treatment for his back. Prior to that injury, a myelogram detected a small disk bulge and ligamentous hypertrophy at the L2-3 level. Prior to the 2002 accident at issue, Hickman had hardware installed at every level of his lumbar spine other than L1-2 and L2-3. One doctor stated that the degeneration of Hickman's lumbar spine was "some of the most severe that I have ever seen." More significantly, on May 28, 2003, Dr. Bernie McHugh performed a lumbar decompression surgery at L2-3. Dr. McHugh testified that Hickman's "facet hypertrophy and ligamentous hypertrophy" compressed the L2 and L3 levels. Further, Dr. McHugh testified that, when he performed the surgery, he found "progressive degenerative changes" rather than "any acute traumatic injury." Dr. McHugh's finding was corroborated with Dr. Peeples's medical examination in 2004 about which Dr. Peeples testified, "I believe his back situation would be impossible to apportion out to his different episodes of surgery and to his degenerative condition."

Thus, based upon this evidence before the Commission, we hold that there was not substantial evidence to support a finding that Hickman's back injury was related to his April 2002 compensable injury. Accordingly, we affirm the Commission's ruling that he failed to prove by a preponderance of the evidence that he sustained a compensable back injury or a total permanent disability.

Affirmed.