2012 Ark. App. 153

**Albert R. WRIGHT, Appellant**

v.

**ST. VINCENT DOCTORS HOSPITAL INDEMNITY INS. CO. OF NORTH AMERICA, Appellee.**

**No. CA 11–831.**

Court of Appeals of Arkansas.

Feb. 15, 2012.

---

George Howard Bailey, Little Rock, for appellant.

Michael Edward Ryburn, Little Rock, for appellee.

CLIFF HOOFMAN, Judge.

Appellant Albert Wright appeals from the Workers' Compensation Commission's decision denying him permanent-disability benefits for his compensable back injury. On appeal, Wright argues that the Commission's decision is not supported by substantial evidence and is contrary to the law. We reverse and remand.

On September 25, 2008, Wright was seventy-two years old and was working full-time for the appellee as a therapist and staffing coordinator. Wright was injured when he stepped off of an elevator that had not stopped level with the floor, resulting in him abruptly landing on his left foot approximately fifteen inches below. He was able to regain his balance and did not fall to the floor, but he did twist his back. Wright was taken to the emergency room, and the clinical impression was documented as "acute myofascial strain." X-rays revealed no acute fracture or dislocation but did note degenerative changes. Wright was prescribed medication and physical therapy. An MRI of his lumbar spine was performed on October 22, 2008, which revealed spinal stenosis and degenerative discs. Beginning in December 2008, Wright was seen by Dr. Bryan, whose initial diagnosis stated as follows:

1. Lumbar sprain, bilateral sacroiliac sprains, and lumbar neuropraxia. Within a reasonable degree of medical certainty the onset of this constellation of symptoms is consistent with his report of a stepoff-impact injury. Contributing factors to the severity and chronicity of his symptoms include his underlying spi-

nal stenosis. The acuity of the disk bulges cannot be determined.

2. Likely propagation of preexisting but asymptomatic cervical degenerative disk disease.

Dr. Bryan recommended injections and physical therapy. On March 20, 2009, Dr. Bryan noted that Wright had an excellent response to the lumbar epidural steroid injections he had received for three months. Dr. Bryan's plan was to continue Wright on limited duty, and he anticipated minimal or no permanent-partial impairment. On April 24, 2009, Dr. Bryan noted that Wright's symptoms had increased since his last visit, and he ordered that Wright resume physical therapy. On May 22, 2009, Dr. Bryan noted that Wright's pain had worsened. Wright was referred to Dr. Kravetz for a consultation. Dr. Kravetz noted the findings on Wright's x-rays and MRI, and he opined that Wright was a candidate for surgery. He also noted the following:

> It is impossible to say, of course, what his exact anatomic injury is, although I suspect either all or very close to all the findings we see on imaging studies were there before he ever had his injury. We would say that the injury, therefore, has aggravated his complaints, rather than actually cause[d] particularly a change in the anatomy.

Because Wright did not wish to have surgery at that time, Dr. Kravetz recommended that he see Dr. Bryan for an impairment rating. In July 2009, Dr. Bryan assigned a permanent-impairment rating of nineteen percent, which included seven-percent impairment for spondylolisthesis and seven percent for three-level degenerative disc disease without radiculopathy.

A hearing was held before an administrative law judge (ALJ) on November 18, 2009, to determine, among other things, Wright's entitlement to benefits for permanent-partial disability. Wright and his wife testified that since his injury he no longer leads an active lifestyle. Specifically, he can no longer fish, landscape the yard, climb a ladder, or pick up his grandchildren. He walks with a limp, cannot sit long enough to get through a dinner, and cannot stand or walk for long periods of time. Wright described how his quality of work decreased after his injury. He testified that he has pain in his lower left back and is never pain-free. He said he had never had any significant back impairment before this injury. The ALJ awarded nineteen-percent anatomical impairment and thirty-percent wage-loss disability. The Commission reversed the decision of the ALJ, and Wright now appeals to this court.

In appeals involving claims for workers' compensation, we view the evidence in the light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. *Leach v. Cooper Tire & Rubber Co.*, 2011 Ark. App. 571, 2011 WL 4477865. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm. *Id.*

The Commission found that Wright did not prove that he sustained any permanent anatomical impairment as a result of the compensable injury. The Commission stated that it "attaches more significant evidentiary weight to the findings of Dr. Kravetz, who opined that there had not been a change in the claimant's anatomy as a result of the compensable injury." Wright argues that the Commission erred in attaching significant weight to that por-

tion of Dr. Kravetz's statement because Dr. Kravetz also recognized that the compensable injury aggravated Wright's condition. Wright argues that his condition was asymptomatic before the compensable injury, and Dr. Kravetz recommended surgery. St. Vincent argues that Wright's MRI is typical of anyone his age and that the impairment rating was based on his preexisting conditions. St. Vincent also argues that it was within the Commission's province to choose to accept Dr. Kravetz's conclusion over Dr. Bryan's.

■ Our workers' compensation statutes provide that "[p]ermanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment." Ark.Code Ann. § 11–9–102(4)(F)(ii)(a) (Supp.2011). Further, "[i]f any compensable injury combines with a preexisting disease or condition or the natural process of aging to cause or prolong disability or a need for treatment, permanent benefits shall be payable for the resultant condition only if the compensable injury is the major cause of the permanent disability or need for treatment." Ark. Code Ann. § 11–9–102(4)(F)(ii)(b). Major cause is defined as "more than fifty percent (50%) of the cause." Ark.Code Ann. § 11–9–102(14)(A). An employer takes the employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable. *Leach v. Cooper Tire & Rubber Co.*, 2011 Ark. App. 571, 2011 WL 4477865.

■ In determining entitlement to permanent benefits, this court has held that the major-cause requirement is satisfied where a compensable injury aggravates an asymptomatic preexisting condition such that the condition becomes symptomatic and requires treatment. *Leach, supra; Pollard v. Meridian Aggregates*, 88 Ark. App. 1, 193 S.W.3d 738 (2004). In *Leach,*

there was no evidence that the appellant had any physical limitations or pain related to his back prior to the work injury. After Leach's accident, there was substantial evidence that his condition had become symptomatic. We held that because his degenerative disc condition was asymptomatic prior to the accident and then symptomatic thereafter, the major-cause requirement was satisfied, and Leach was thus entitled to permanent benefits.

■ Here, Wright's testimony established that prior to the accident, he had never had serious back pain and he was physically able to perform many activities and all of his work duties. This testimony was unrefuted. Furthermore, Wright's family doctor, Dr. Howard, submitted a letter stating that Wright had been his patient for more than ten years and had not had a significant impairment before September 2008.

■ Although the Commission may choose to accept one medical opinion over another, the doctors' opinions here were not *conflicting.* Both Dr. Bryan and Dr. Kravetz noted objective findings to support an impairment, including spinal stenosis. *See Pollard, supra.* Dr. Kravetz stated his suspicions, but he did not give an opinion addressing permanent impairment within a reasonable degree of medical certainty, as required by Arkansas Code Annotated section 11–9–102(16)(B). Dr. Kravetz suggested that Wright see Dr. Bryan for an impairment rating, and Dr. Bryan found that a rating was warranted. Like in *Leach,* Wright's degenerative condition was asymptomatic prior to the accident and then symptomatic thereafter; thus, we hold that the major-cause requirement was satisfied. The Commission's opinion fails to display a substantial basis for denying permanent benefits. We reverse and remand for the Commission to assess

an impairment rating and determine Wright's entitlement to wage-loss disability benefits.

Reversed and remanded.

ABRAMSON, MARTIN and BROWN, JJ., agree.

VAUGHT, C.J., and GRUBER, J., dissent.

VAUGHT, C.J., dissenting.

The decision of the Workers' Compensation Commission denying permanent partial disability to the appellant is supported by substantial evidence. Therefore, I dissent. The Commission found, "[I]n the present matter, the preponderance of the evidence does not support Dr. Bryan's finding that the claimant sustained a 19% whole-person impairment," "that the claimant did not prove by a preponderance of the evidence that the . . . injury was the major cause of any percentage or degree of permanent physical impairment," and that "the claimant did not prove that he sustained any percentage or degree of permanent physical impairment [that] was supported by objective and measurable physical findings."

This seventy-two-year-old man had degenerative back problems before the compensable injury occurred. Everyone agrees that the step off the elevator aggravated the preexisting degenerative conditions. However, aggravating the symptoms and causing pain alone is not necessarily enough to cause a permanent-anatomical impairment. Both Drs. Kravetz and Bryan indicated that the x-rays and MRI showed no discernable anatomical change that could be attributed to the injury. Dr. Bryan, before being asked to give a rating, stated that he anticipated minimal or no permanent-partial impairment. When he gave the rating he attributed a portion of the rating to spondylolisthesis and a portion to degenerative-disc disease, neither of which were caused by or significantly effected by the injury. Both of these were observed by examinations before the injury.

The majority relies on *Pollard v. Meridian Aggregates,* 88 Ark.App. 1, 193 S.W.3d 738 (2004) and *Leach v. Cooper Tire & Rubber Co.,* 2011 Ark. App. 571, 2011 WL 4477865, for the proposition that if the injury aggravated an otherwise asymptomatic preexisting condition, then any permanent impairment subsequently found would be attributable to the injury as the major cause. Both of these cases are distinguishable from the instant case. And insofar as *Leach* extends the language of *Pollard* beyond its facts, it is contrary to both statutory and established case law. In *Pollard,* the injury was significant enough to require surgery and there was discernable anatomical impairment requiring a permanent rating. The only issue was whether the injury was the major cause. The Commission found that because the rating was based on the preexisting condition in a higher percentage than the injury, the injury was not the major cause. Our court reversed, holding that because the need for surgery and the resulting impairment would not have occurred but for the work-related aggravation, it was the major cause. Here, there was no need for surgery and no anatomical change.

In *Leach,* a back injury aggravated preexisting degeneration, just as in this case. But, in *Leach,* the MRI after the accident revealed a possible fracture and/or traumatic injury to the spine, and the doctor observed muscle spasms. Here, there was no new fracture and no new anatomical changes observed. The problem is that the language of *Leach* goes beyond the facts, and citing *Pollard,* makes a broad holding that the major cause requirement is satisfied where a

compensable injury aggravates an asymptomatic preexisting condition such that the condition becomes symptomatic and requires treatment. Standing alone, this statement flies in the face of Arkansas Code Annotated section 11–9–102(14), which defines major cause as more than fifty percent of the cause. The supreme court has emphasized this threshold requirement by reversing our court in a case where we relied on *Pollard*. *Hickman v. Kellogg, Brown, & Root*, 372 Ark. 501, 277 S.W.3d 591 (2008). They held that even if surgery is required, the claimant still must prove that the injury is more than fifty percent of the cause of the needed medical treatment. *Hickman, supra*.

Mr. Wright was aging, and the tests both before and after the accident confirmed his degenerative conditions. While the injury aggravated the symptoms, it did not change the anatomy or cause any impairment beyond the normal process of aging. Substantial evidence supports the Commission's decision, and I would affirm. Judge Gruber joins this opinion.