# ARKANSAS COURT OF APPEALS

DIVISIONS II & III
No. CV–13–27

| | |
|---|---|
| | Opinion Delivered September 18, 2013 |
| ST. EDWARD MERCY MEDICAL CENTER and SISTERS OF MERCY HEALTH SYSTEM<br><br>APPELLANTS<br><br>V.<br><br>DEBORAH WARNOCK<br><br>APPELLEE | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. F905402]<br><br><br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellants, St. Edward Mercy Medical Center and its insurance carrier, Sisters of Mercy Health System, appeal the November 27, 2013 order of the Arkansas Workers' Compensation Commission. The order included a finding that appellants willfully and intentionally failed to pay appellee temporary- total disability (TTD) benefits from October 11, 2011, until a date to be determined. As a result, appellants were ordered to pay a thirty-six percent penalty until the payments were made current. The Commission also found appellants in contempt by refusing to approve appellee's surgical intervention for a period of forty days and fined appellants a total of $4,000. Appellants argue that the evidence was insufficient to support the Commission's findings. We affirm.

This is the second time this case is before us. In our previous opinion we affirmed the Commission's December 15, 2010 decision that appellee was entitled to additional medical

treatment in the form of surgical intervention as recommended by Dr. Robert Bebout for her compensable right shoulder injury and that appellee was also entitled to TTD benefits from May 10, 2009, until a date to be determined.[1] Our order affirming the Commission became final on September 25, 2011.

Appellants took a deposition of appellee on October 3, 2011. During the deposition, appellee acknowledged that she had received unemployment benefits while off work due to her compensable injury. She also acknowledged that she performs some light household chores and does some driving. On October 11, 2011, appellants made a check payable to appellee in the amount of $25,227.27. The check covered appellee's TTD benefits from May 10, 2009, to October 10, 2011. On October 21, 2011, Dr. Charles E. Pearce wrote a letter to appellants.[2] In the letter, Dr. Pearce opined that appellee had reached maximum medical improvement (MMI) as of October 21, 2011, due to the fact that appellee had not pursued the MR arthrogram as recommended. Appellants did not pay any more TTD benefits to appellee after the October 11, 2011 check. Appellee subsequently filed a claim concerning her TTD benefits. She also sought to have a thirty-six percent penalty assessed against appellants and asked that appellants be fined up to $10,000 for defying the final order of the Commission.

The hearing took place on May 10, 2012. At the time of the hearing, appellee still had not undergone surgery for her right shoulder. According to her testimony and the medical

---

[1]*St. Edward Mercy Med. Ctr. v. Warnock*, 2011 Ark. App. 500.

[2]Dr. Pearce performed an independent medical examination on appellee on June 8, 2010.

evidence presented, appellants had not authorized the procedure.[3] Appellants' attorney stated

that appellants believed appellee had reached MMI as opined by Dr. Pearce because she had

not had surgery; however, he denied that appellants had ever controverted appellee's surgery.

The Commission found in pertinent part:

> To base the termination of temporary total disability benefits on the fact that the claimant has not had surgical intervention as of October 21, 2011, is ludicrous. The claimant had asked for surgery on her right shoulder at the May 20, 2010 hearing in front of this Administrative Law Judge. That surgery was controverted by the respondents. The surgery was ordered and the respondents appealed that order up to the Court of Appeals. The order for the claimant to obtain surgery became final on September 25, 2011. Then 15 days later, the respondents terminated temporary total disability benefits "based on the lack of surgery at the time or based on a non-surgical evaluation." This demonstrates willful and intentional failure to pay temporary total disability benefits to the claimant. I also note that the respondents actually cut off the claimant's temporary total disability benefits on October 10, 2011, and that Dr. Pearce's letter was dated October 21, 2011, some 11 days after the respondents terminated temporary total disability benefits.
>
> I also note that Dr. Pearce was not the claimant's treating physician. She was seen by him at the request of the respondents. His only visit with the claimant was on June 8, 2010. He did recommend an MR arthrogram at that time. I note that this visit was less than one month after the claimant's May 20, 2010 hearing in this matter where the respondents were contesting medical treatment for the claimant's right shoulder. It was not the claimant's fault that the recommendations by Dr. Pearce were not followed. It was the respondents controversion of medical treatment to the claimant's right shoulder that caused the claimant an inability to receive that recommended treatment. The respondents in this matter shall pay a 36% penalty on the temporary total disability benefits beginning on October 11, 2010, as found in Ark. Code Ann. 11-9-802(e). The respondents shall pay the 36% penalty on all temporary total disability benefits from the October 11, 2011 until such time as those temporary total disability benefits are brought current. The claimant is and continues to be entitled to temporary total disability benefits. She will continue to be entitled to those benefits

---

[3]The surgical procedure was subsequently authorized on May 15, 2012. Appellee was seen by Dr. Bebout on December 7, 2011; however, he wished to have MRIs of appellee's neck and shoulder performed before any surgical intervention. Appellants did not authorize the MRIs until February 8, 2012.

until the ordered surgical intervention is performed and the claimant has reached her MMI date, which is a date yet to be determined. Although the respondents shall only pay the 36% penalty on temporary total disability benefits until the date they are current.

The Commission further found appellants in contempt of its prior order by failing to

approve appellee's surgery until May 15, 2012. It stated:

From the evidence presented both by the claimant and the respondents in this matter, it seems very clear to me that the respondents have disobeyed or resisted a lawful order of this Commission. The order from the opinion dated August 18, 2010, became final on September 25, 2011. That opinion and order were very clear that the claimant was entitled to surgical intervention on the right shoulder due to her compensable injury. The claimant did have a bout of claustrophobia that caused a delay in getting her MRI done. However, the document found at claimant's Exhibit No. 4 page 1 is clear that on April 5, 2012 Dr. Evans scheduled surgery for the claimant on April 18th. That surgery which had been ordered was then not approved by the respondents as evidenced by the telephone contact document found at Claimant's Exhibit No. 4 page 2 and Claimant's Exhibit No. 4 page 3. Additional proof is found at claimant's exhibit No. 4 page 4 in the questions asked by Wanda Clark to Dr. Bebout and Dr. Evans about whether they believed within medical certainty that the surgical intervention anticipated by the claimant was caused by her accident of May 9, 2009. Clearly that issue had been determined by the Commission. The surgery was ordered and that Order became final yet the respondents continued to ask the treating physician whether or not that surgery is reasonable and necessary as it relates to her injury of May 9, 2009. The respondents also introduced the emails from Ms. Musgrave to Wanda Clark and from Wanda Clark to Ms. Musgrave after the hearing in this matter. I have allowed them to be in evidence over the objection of the claimant however, I believe that this email exchange clearly shows that the respondents had denied the surgery scheduled by Dr. Evans and that surgery was not approved by the respondents until Ms. Wanda Clark's email to Sara Musgrave dated May 15, 2012, when she states: "Go ahead and schedule the surgery and let me know the date."

I do find the respondents are in contempt of a lawful Order of this Commission and that contempt began on April 5, 2012 when Ms. Clark was informed by Ms. Musgrave via facsimile transmission that the claimant had surgery scheduled for the 18th of April. The respondents did not approve that surgery although it had been ordered to be performed by the Commission until May 5, 2012. That is a period of 40 days. As the respondents is in contempt of this Commission's lawful order, I find that they are to be fined $100.00 a day for the 40 day period in which they refused to approve the surgery for the claimant that was ordered by this Commission.

4

This appeal followed.

Appellants argue that the Commission's decision was not supported by substantial evidence. In reviewing a decision from the Arkansas Workers' Compensation Commission, we view the evidence and all reasonable inferences in the light most favorable to the Commission's findings.[4] We affirm those findings if they are supported by substantial evidence, which is relevant evidence that a reasonable person might accept as adequate to support a conclusion.[5] We will not reverse the decision of the Commission unless we are convinced that fair-minded persons considering the same facts could not have reached the same conclusions.[6] The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; rather, it is whether there is substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had been sitting as the trier of fact.[7] It is the function of the Commission, not this court, to determine the credibility of witnesses and the weight to be given to the evidence.[8] Because the Commission affirmed and adopted the ALJ's opinion as

---

[4] *Sw. Energy Co. v. Ezell*, 2011 Ark. App. 782.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

5

its own, we consider both the ALJ's order and the Commission's majority order in our review.[9]

For their first point, appellants argue that the evidence was insufficient for the Commission to grant appellee TTD benefits from October 11, 2011, to a date to be determined. More specifically, appellants argue that "there is no evidence that appellee is incapable of earning wages." Appellee's entitlement to TTD benefits was decided in our previous opinion. In that opinion, we found that appellee was entitled to additional medical treatment including surgical intervention on her shoulder. Since appellee has not received the additional medical treatments ordered, i.e. surgery, that decision became law of the case here.[10]

Next, appellants contend that they should not have been penalized thirty-six percent on appellee's TTD benefits because they had a good-faith basis for controverting appellee's entitlement to those benefits. The relevant statute provides that "[i]n the event that the commission finds the failure to pay any benefit is willful and intentional, the penalty shall be

_____

[9] *Smith v. Commercial Metals Co.*, 2011 Ark. App. 218, 382 S.W.3d 764.

[10] The doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided on appeal. *Cadillac Cowboy, Inc. v. Jackson*, 347 Ark. 963, 69 S.W.3d 383 (2002). The law-of-the-case doctrine also prevents consideration of an argument that could have been raised at the first appeal and is not made until a subsequent appeal. *First Commercial Bank v. Walker*, 333 Ark. 100, 969 S.W.2d 146 (1998). The doctrine serves to effectuate efficiency and finality in the judicial process, and its purpose is to maintain consistency and avoid reconsideration of matters once decided during the course of a single, continuing lawsuit. *Jones v. Double "D" Props., Inc.*, 357 Ark. 148, 161 S.W.3d 839 (2004).

up to thirty-six percent (36%), payable to the claimant."[11]   Appellants decided to cut off appellee's TTD benefits on October 10, 2011, only fifteen days after this court affirmed the award.  They argued before the Commission that they were relying on Dr. Pearce's opinion that appellee had reached MMI October 21, 2011.  The Commission considered this evidence and rejected it.  It is the Commission's function to weigh the evidence, and we defer to it on issues of credibility.[12]   Substantial evidence supports the Commission's imposition of a thirty-six percent penalty.  Therefore, we affirm.

Last, appellants argue that the Commission erred in finding appellants in contempt. The standards of review for civil and criminal contempt are different.  In reviewing a finding of civil contempt, we decide whether the circuit court's finding is clearly against the preponderance of the evidence.[13]  In reviewing a finding of criminal contempt, however, we determine whether the circuit court's decision is supported by substantial evidence, viewing the record in the light most favorable to the circuit court's decision.[14]   Indeed, there are significant differences in the nature of the two types of contempt.[15]   But the substantive rules on contempt, whether civil or criminal, are the same.[16]   In order to be found in contempt,

---

[11]Ark. Code Ann. § 11-9-802(e) (Repl. 2012).

[12]*Ezell, supra.*

[13]*Bundy v. Moody*, 2011 Ark. App. 200.

[14]*Id.*

[15]*Id.*

[16]*Id.*

the alleged contemptor must willfully disobey a valid court order.[17] But before the alleged contemptor can be held accountable for his disobedience, the order must have been "definite in its terms, clear as to what duties it imposes, and express in its commands."[18] Here, the Commission held appellants in contempt for failing to approve appellee's surgery. The relevant portion of the order in question directed appellants to "bear the burden of the cost associated with the reasonable and necessary medical treatment recommended by Dr. Bebout." Although appellants were under a valid court order to bear the cost of appellee's shoulder surgery, they withheld approval of the surgery for over a month after appellee was scheduled to undergo surgical intervention. They also questioned the reasonableness and necessity of the surgery after the issue had already been litigated. The statute supports the Commission's finding of contempt. Therefore, we affirm.

Affirmed.

GLADWIN, C.J., and WALMSLEY, HARRISON, and GLOVER, JJ., agree.

WOOD, J., dissents

**RHONDA K. WOOD, Judge, dissenting.** One of the stipulated issues in this case was whether Deborah Warnock was entitled to temporary total-disability (TTD) benefits from October 11, 2011, to a date to be determined. Warnock offered no proof at the hearing that she was incapable of earning wages, a requirement to receive TTD benefits. Therefore, I

---

[17] *Id.*

[18] *Id.*

would reverse the Commission's award of benefits and its imposition of a 36% penalty against appellants.

The prehearing order in this case read as follows: "By agreement of the parties the issues to litigate are limited to the following: . . . [t]emporary total disability from October 2011, to a date to be determined." The Commission adopted this stipulation as fact and ruled that Warnock was entitled to TTD benefits. The majority affirms the Commission's decision because Warnock had not yet had the surgery we ordered in the previous appeal; moreover, the majority holds, the previous decision is law of the case. But whether Warnock was entitled to additional surgery and whether she was entitled to TTD benefits are two distinct questions. Additionally, the law-of-the-case doctrine does not apply because the issues in this appeal and the previous appeal are different; further, the issue was never raised below, so we cannot address it now.

Warnock had the burden of proof at the hearing, which she failed to meet. To receive temporary total-disability benefits, a claimant has the burden of proof to demonstrate by a preponderance of the evidence (1) that she was within a healing period and (2) that she was totally incapacitated from earning wages. *Hickman v. Kellogg, Brown & Root*, 372 Ark. 501, 277 S.W.3d 591(2008). Yet in this case, Warnock did not present any medical evidence that she was unable to work from October 2011 forward. Instead, she admitted to filing and receiving unemployment benefits after informing the agency she was able and available for employment.[1] The ALJ's order, adopted by the Commission, merely concluded that because

---

[1] This is unlike the first appeal, where Warnock presented a doctor's note that said she could not lift over twenty pounds and could not return to work for three weeks. But that

Warnock was within her healing period then she was entitled to TTD benefits. That decision erred by implying that a claimant within the hearing period automatically receives TTD benefits.[2] That is not the law. Applying the proper legal test, I would find that Warnock failed to meet her burden that she was incapable of earning wages from October 2011 to a date to be determined and would hold that she is not entitled to benefits.

Last, the law-of-the-case doctrine is inapplicable. The law-of-the-case doctrine provides that on a second appeal the decision of the first appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal, and also of those which might have been, but were not, presented. *Clemmons v. Office of Child Support Enforcement*, 345 Ark. 330, 47 S.W.3d 227 (2001). The doctrine prevents an issue raised in a prior appeal from being raised in a subsequent appeal. *Id.*

The issue raised in the prior appeal was TTD benefits from May 2010 forward. Here, the issue raised was TTD benefits from October 2011 forward, an issue that was not decided in the former appeal. In fact, it is what the parties stipulated that the hearing was about. If the issue of TTD benefits from October 2011 forward was precluded by the law-of-the-case doctrine, then a hearing on that issue would have been irrelevant, and the ALJ would not have accepted the stipulation that this issue was properly in front of the Commission for a determination. Warnock could have simply asserted that our prior appeal required that her TTD benefits continue indefinitely.

---

note was from June 2009, two years earlier than when this hearing took place in May 2012.

[2]Surgery could be necessary even if the claimant cannot receive TTD benefits. *See, e.g., Stallworth v. Hayes Mech., Inc.*, 2013 Ark. App. 188 (affirming denial of TTD benefits, but remanding for additional findings regarding medical treatment).

Additionally, Warnock did not object and argue that a new decision on TTD benefits was precluded by the law of the case. And law of the case, like res judicata, is an affirmative defense and cannot be raised for the first time on appeal. *Clemmons*, *supra*. "In order to preserve an issue for appellate review in a workers' compensation case, it is a party's responsibility to present the issue to the Commission and obtain a ruling." *St. Edward Mercy Med. Ctr. v. Chrisman*, 2012 Ark. App. 475, at 6, 422 S.W.3d 171, 175. Because Warnock did not raise the law–of–the–case defense and obtain a ruling, we cannot affirm on that basis. *Anderson, Murphy & Hopkins, L.L.P.*, by: *Randy P. Murphy* and *Kyle E. Burton*, for appellants.

*Walker, Shock & Harp, PLLC*, by: *Eddie H. Walker, Jr.*, for appellee.

.