Cite as 2017 Ark. App. 296

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-816

| | |
|---|---|
| BREANNA NICOLE MADORE<br>APPELLANT | **Opinion Delivered** May 10, 2017 |
| V. | APPEAL FROM THE GARLAND<br>COUNTY CIRCUIT COURT<br>[NO. 26JV-16-187] |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES and MINOR<br>CHILDREN<br>APPELLEES | HONORABLE DAVID GOODSON,<br>JUDGE<br>REVERSED |

## PHILLIP T. WHITEAKER, Judge

Breanna Madore appeals a Garland County Circuit Court order adjudicating her two sons, A.M. and P.M., dependent-neglected. On appeal, Breanna challenges the trial court's finding of parental neglect. Because there are no facts in the record to support the trial court's finding that the children were left alone, we reverse.

I. *Facts and Procedural History*

On April 4, 2016, Breanna and her two children were transported by ambulance to National Park Hospital. Breanna was exhibiting signs of extreme paranoia and delusional thinking. She reported that she had been hypnotized and that her children had been poisoned by a cab driver. The children were examined at the hospital and did not exhibit any unusual behavior or medical symptoms. Breanna, however, received a psychiatric consult, and it was

SLIP OPINION

determined that she needed inpatient psychiatric treatment. Based on this, the Department of Human Services (DHS) was contacted.

DHS investigated the situation with Breanna and the home. The hospital staff reported that Breanna was distressed, panicked, anxious, and hallucinating. They further reported that her mental state deteriorated during hospitalization and that she tested positive for THC. DHS contacted the home and learned that Paul Madore III, the children's father,[1] was at home. He indicated that he was not aware that Breanna had left with the children because he was asleep because he worked the night shift and slept during the day. He informed the caseworker that he was aware that Breanna was delusional and had exhibited signs of paranoia but, in his opinion, she was functioning appropriately, and he did not believe his children to be in danger. DHS determined that the home was clean and appropriate. However, Paul also tested positive for THC.

Based on its investigation, DHS placed a 72-hour hold on the children. DHS filed a petition for emergency custody and dependency-neglect alleging that the children were dependent-neglected as defined by Arkansas Code Annotated section 9-27-303 as a result of neglect and parental unfitness. The court entered an ex parte order for emergency custody and later found that probable cause existed.

The adjudication hearing was held on June 2, 2016. DHS presented testimony from the hospital staff concerning Breanna's admittance to the hospital and her medical condition at the time. The court heard testimony that the children were with Breanna during her

---

[1]Paul was also a party to the adjudication. He, however, is not a party on appeal because he did not appeal the adjudication.

hospitalization. In fact, she presented at the emergency room because she was concerned about the children. She was very affectionate with the children and took good care of them while they were at the hospital. She made sure both children were fed, and she even breastfed the youngest. The children appeared healthy, happy, and relatively clean. DHS investigator Lennie Robinson also testified that there was no evidence that Breanna had not appropriately supervised or cared for her children. Robinson reported that the basis for the removal was the fact that Breanna had to be hospitalized for a mental issue.

Breanna testified on her own behalf. She admitted that, on April 4, 2016, she had smoked an illegal substance she believed to be laced with something that caused her to hallucinate. She denied having a prior history of mental disturbance or hallucinations and denied prior drug use. She testified that, despite whatever issues she was having that day, she was still able to care for her children, including bathing and feeding them.

The court found the children to be dependent-neglected as defined by the juvenile code because Breanna and Paul failed to appropriately supervise the children, resulting in the children being left alone at an inappropriate age, creating a dangerous situation or a situation that puts the children at risk of harm or in inappropriate circumstances creating a dangerous situation that puts the children at risk of harm. *See* Ark. Code Ann. § 9–27–303(36)(A)(vii) *(a)*, *(b)* (Repl. 2015). Breanna appeals the trial court's finding of neglect, arguing that there was no evidence in the record that the children had been "left alone."



## II.  *Standard of Review*

In dependency-neglect cases, our standard of review on appeal is de novo, and we defer to the circuit court's evaluation of the credibility of the witnesses. *Maynard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 82, 389 S.W.3d 627.  We do not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Figueroa v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 83. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*. Breanna argues that the circuit court's finding that she failed to supervise her children, resulting in the juveniles' being left alone, is clearly erroneous.  We agree.

The court in this case adjudicated the children to be dependent-neglected as defined by the juvenile code. The juvenile code, Arkansas Code Annotated section 9-27-303(18)(A), defines a dependent-neglected juvenile as any juvenile who is at substantial risk of serious harm as a result of . . . "neglect."  Arkansas Code Annotated section 9-27-303(36) sets forth a list of conduct (or lack thereof) that constitutes neglect.  Specifically, section 9-27-303(A) defines neglect, in part, as the

> (vii) [f]ailure to appropriately supervise the juvenile, that results in the juvenile's being left alone:
>
>> *(a)* [a]t an inappropriate age, creating a dangerous situation or a situation that puts the juvenile at risk of harm; or
>>
>> *(b)* [i]n inappropriate circumstances, creating a dangerous situation that puts the children at risk of harm.

*See* Ark. Code Ann. § 9–27–303(36)(A)(vii)*(a)* & *(b)* (Repl. 2015). Here, the court made a very specific finding as to neglect, closely tracking the language set forth in section 9–27–303(36)(A)(vii)*(a)* & *(b)*. To support its conclusion, the trial court found that Breanna was delusional and irrational. However, the court did not make a finding that the children had ever been "left alone" as required by the subsection of the juvenile code cited by the court in its finding of neglect.

It is important to note that our legislature in 2013 amended the juvenile code and added a subsection nearly identical to the one relied on by the trial court, but it does not require a finding that the children be "left alone."[2] Thus, it is clear that the legislature intended the phrase "left alone" to have some independent relevance. Here, the trial court did not cite any evidence; in fact, there was no evidence that Breanna ever left the children alone. Thus, however delusional or psychotic Breanna may have been, the evidence presented to the court did not meet the statutory criteria for neglect relied on by the trial court. As such, the trial court's basis for the finding of neglect in this instance was clearly erroneous and unsupported by the evidence.

---

[2]Act 1055 of 2013 amended the definition of neglect to include the following:

> (viii) Failure to appropriately supervise the juvenile that results in the juvenile being placed in:
>
> > (a) Inappropriate circumstances creating a dangerous situation; or
> >
> > (b) A situation that puts the juvenile at risk of harm . . . .

Act of Apr. 13, 2013, No. 1055, § 6, 2013 Ark. Acts 3963, 3965.

We note that neither DHS nor the attorney ad litem for the children dispute that the evidence before the trial court was lacking in this regard; rather, they assert that this court must affirm as long as we, during our de novo review of the record, find that any of the myriad actions constituting neglect under the statute exist. In support of their argument, they cite *Durham v. Arkansas Department of Human Servs.*, 322 Ark. 789, 912 S.W.2d 412 (1995). That case, while it does stand for the proposition for which it is cited, involves the registration of a foreign-support order, not an action for dependency-neglect. We note that the interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests. *Troxel v. Granville*, 530 U.S. 57 (2000). Because DHS and the ad litem have failed to provide us with any relevant caselaw or otherwise articulate why we should apply this theory in a case such as this, which affects the party's fundamental rights, we decline to do so.

DHS and the ad litem also cite *Maynard v. Arkansas Department of Human Services*, 2011 Ark. App. 82, 389 S.W.3d 627, for the proposition that Breanna's illegal drug use alone constituted neglect. However, our decision in *Maynard* is easily distinguishable. In *Maynard*, the trial court found the children to be dependent-neglected pursuant to Arkansas Code Annotated section 9-27-303(18)(A) which, as stated above, defines a dependent-neglected juvenile as any juvenile who is at "substantial risk of serious harm" as a result of . . . "neglect." The court then found that two statutory definitions of neglect had been proved, including the subsection at issue in this case. However, unlike the issue here, the issue on appeal in *Maynard* was not whether there was evidence to support the statutory definition of neglect found by

the trial court, but rather whether the neglect as found by the court placed the child at "substantial risk of serious harm." At no point in our *Maynard* opinion do we discuss whether the child had been "left alone" for purposes of a finding of neglect.

This case is more akin to our decision in *Arkansas Department of Human Services v. Lewis*, 2017 Ark. App. 140, ___ S.W.3d ___, in which our court affirmed a trial court's denial of a dependency-neglect finding. In *Lewis*, DHS filed a petition for dependency-neglect as to two minor children after the younger, who was only one month old and in an infant carrier, fell down a staircase while the mother was engaged in an argument with the father. Lewis argued that the fall was an accident and that she had never left the children alone. The trial court agreed and declined to adjudicate the children dependent-neglected. We affirmed the denial.

Here, because there was no evidence presented to support the trial court's specific finding of neglect, its determination was clearly erroneous, and we must reverse.

Reversed.

KLAPPENBACH and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.